1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   TASHA SCOTT,

NO. CIV. 06-1216 LKK/EFB

11

        Plaintiff,

12

        v.                                _____

13

SOLANO COUNTY HEALTH AND SOCIAL          **O R D E R**

14   SERVICES DEPARTMENT, SOLANO
COUNTY, PATRICK DUTERTE and

15   TRISH EDIE, et al,

16           Defendants.
_____/

17

18      Plaintiff, Tasha Scott ("Scott"), files suit against

19   defendants Solano County, Solano County Health & Social Services

20   Department ("CHSS"), Patrick Duterte (Director of Solano CHSS)[1],

21   and Trish Edie (plaintiff's supervisor), alleging the following

22   claims against all defendants: 1) "Racial and Color Discrimination"

23   (Government Code § 12940, Title VII, and 42 U.S.C. § 1983); 2)

24   _____

25      [1] Plaintiff only refers to Duterte as "Director" in her
complaint.  Compl. at 2:18.  The court assumes that plaintiff

26   Duterte was the Director of CHSS.

1

1  Harassment/Hostile Work Environment (Government Code § 12940, Title

2  VII); 3) Retaliation (Government Code § 12940); 4) Violation of the

3  Covenant of Good Faith and Fair Dealing; 5) Intentional Infliction

4  of Emotional Distress; 6) Negligent Infliction of Emotional

5  Distress; 7) Employment Practices Discipline in Violation of Public

6  Policy; 8) Violation of Article 1, Section 7 of the California

7  Constitution; 9) Violation of Article 1, Section 8 of the

8  California Constitution; 10) Violation of Government Code § 12948;

9  11) Wrongful Termination in Violation of Public Policy; 12)

10  Wrongful Termination; 13) Negligent Hiring, Supervising and/or

11  Training; 14) Defamation.

12      Defendants move to dismiss all claims, except for claim five

13  (Intentional Infliction of Emotional Distress).  I decide the

14  matter based on the pleadings, the parties' papers and after oral

15  argument.[2]

16                                **I.**

17                    **ALLEGATIONS OF THE COMPLAINT**

18      Plaintiff, Tasha Scott, is an African-American woman who was

19  employed by defendant, CHSS, as an Employment Resource Specialist

20  from July 9, 2002 until her termination on October 14, 2004.

21  Compl. at 1-2.  Plaintiff alleges that she applied for supervisory

22  positions on or about January 2004 and May 2004, but that less

23  qualified Caucasian individuals were hired for such positions.  Id.

24
_____

25      [2] Defendants make no claims concerning the § 1983 action.
    Accordingly, it should not be dismissed.  The claim, however,
    assuming it is actually made, is intertwined with other causes of
26  action and must therefore be dismissed as badly pled.

1  at 2.  She contends that when she complained of race discrimination

2  because "she was more qualified than the person's [sic] hired," she

3  "became a target of retaliation."  Id.

4      Plaintiff maintains that during the course of her employment

5  she objected to violating the rights of her clients by "rushing

6  clients into signing documents stating they read and understood

7  their rights and responsibilities" when many of them could not read

8  or did not understand what they were signing.  Compl. at 2.  Scott

9  allegedly expressed concern to "lead worker" Dave Madden, who then

10  communicated plaintiff's concerns on or about August 2004 to Trish

11  Edie ("Edie"), plaintiff's supervisor.  Plaintiff claims that

12  because of her complaints about rushing clients into signing

13  documents they did not understand, she was "singled out" and

14  "required to go through mandatory new employee training even though

15  she had already been employed more than two years and had exemplary

16  performance."  Id.

17      On September 22, 2004, plaintiff alleges that without any

18  warning or notice, she was removed from her position and "false

19  charges were levied against her," accusing her of "dishonesty and

20  violation of company rules."  Compl. at 2.  On October 14, 2004,

21  Scott's union representative advised Director, Patrick Duterte, and

22  Human Resource [sic] Manager, Wayne Page, that there was no

23  evidence that plaintiff "exhibited any dishonesty or lack of

24  integrity or violated any policies."  Id. Nevertheless, Scott was

25  terminated by defendant on October 14, 2004.  Id.

26      On December 16, 2005, plaintiff filed the instant suit in

1   Alameda County Superior Court.   Plaintiff seeks general,

2   compensatory, special, and punitive damages, front pay and back

3   pay, and attorney's fees. Compl. at 16. On June 5, 2006, defendants

4   removed the action from Alameda County Superior Court to this Court

5   pursuant to 28 U.S.C. § 1441.[3]

6                                  **II.**

7            **DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)**

8            On a motion to dismiss, the allegations of the complaint must

9   be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

10  The court is bound to give the plaintiff the benefit of every

11  reasonable inference to be drawn from the "well-pleaded"

12  allegations of the complaint.  See Retail Clerks Intern. Ass'n,

13  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

14  Thus, the plaintiff need not necessarily plead a particular fact

15  if that fact is a reasonable inference from facts properly alleged.

16  See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

17  (inferring fact from allegations of complaint).

18          In general, the complaint is construed favorably to the

19  pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   So

20  construed, the court may not dismiss the complaint for failure to

21  state a claim unless it appears beyond doubt that the plaintiff can

22  prove no set of facts in support of the claim which would entitle

23  him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69,

24  _____

25          [3] Defendants explain that their notice of removal was filed
    within thirty days of their receipt of the summons and complaint.
26  Notice of Removal at 2.

                                   4

1  73 (1984) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

2  In spite of the deference the court is bound to pay to the

3  plaintiff's allegations, however, it is not proper for the court

4  to assume that "the [plaintiff] can prove facts which [he or she]

5  has not alleged, or that the defendants have violated the . . .

6  laws in ways that have not been alleged." <u>Associated General</u>

7  <u>Contractors of California, Inc. v. California State Council of</u>

8  <u>Carpenters</u>, 459 U.S. 519, 526 (1983).

9                                 **III.**

10                              **ANALYSIS**

11      Defendants move to dismiss all but one of plaintiff's fourteen

12  causes of action.  The court turns to each cause of action and

13  explains why defendants' motion must be GRANTED in part, and DENIED

14  in part.[4]

15  ///

16  **A.  TITLE VII AND FEHA CLAIMS (CLAIMS 1,2,3)**

17  _____

18      [4]  The court is compelled to note that it has spent an
    unreasonable amount of time adjudicating this matter because of
19  plaintiff's counsel's conduct.  Although the court has sanctioned
    plaintiff's counsel $300 for twice failing to file an opposition
20  brief, and generously provided plaintiff's counsel with a third
    opportunity to file the brief, the opposition brief which was filed
21  on August 11, 2006 fails to adequately respond to defendants'
    arguments.  Of the ten pages submitted by plaintiff, a recitation
22  of the facts makes up six of those pages, and the standards make
    up another page.  In sum, it appears plaintiff's counsel has filed
23  only three pages of argument that attempt to respond to
    defendants' motion.  Unfortunately, these three pages fail to
24  apprise the court of the relevant cases and issues.  Plaintiff's
    counsel is admonished that her future failure to respond to the
25  court's orders and to adequately represent her client will result
    in severe sanctions, dismissal of the instant matter, and/or
26  referral to the California State Bar.

                                   5

1    Plaintiff's first claim for relief alleges "Racial and Color

2 discrimination" pursuant to Title VII,[5] the California Fair

3 Employment and Housing Act ("FEHA")[6], and 42 U.S.C. § 1983.[7]

4 Plaintiff's second claim alleges "Harassment/Hostile work

5 environment" under Title VII and FEHA, while her third claim

6 alleges "Retaliation" under FEHA.[8]

7    Individual defendants Patrick Duterte, Director of CHSS, and

8 Trish Edie, plaintiff's supervisor, move to dismiss the Title VII

9 and FEHA claims asserted against them, arguing that supervisors and

10 other individual employees are not an "employer" as defined under

11 Title VII and FEHA, and thus cannot be held personally liable.

12 Mot. at 4.  Defendants maintain that only the county may properly

13 be considered plaintiff's employer.

14    Defendants are only partially correct.  Under Title VII, there

15 is no personal liability for employees.  FEHA, however, allows

16 ───────────────

17    [5] Title VII of the Civil Rights of 1964 Act is codified as
Subchapter VI of Chapter 21 of Title 42 of the United States Code,

18 42 U.S.C. § 2000e et seq.  Title VII outlaws discrimination in
employment in any business on the basis of race, color, religion,

19 sex or national origin (see 42 U.S.C. § 2000e-2). Title VII also
prohibits retaliation against employees who oppose such unlawful

20 discrimination.

21    [6] FEHA, which is codified at § 12900 et seq. of the Government
Code, is a state antidiscrimination statute that confers on

22 employees a right against dismissal on certain grounds and creates
a remedy for its violation.

23    [7] To establish a violation of 42 U.S.C. § 1983, plaintiff must
prove that defendants acted under color of state law, and deprived

24 Plaintiff of her constitutional rights. West v. Atkins, 487 U.S.
42, 48(1988).

25

26    [8]  Plaintiff's allegations in claims one through three are
lodged at all defendants.  Compl. at 4-7.

1  liability to attach to individual employees for harassment and
2  retaliation.

3      **a. Title VII**

4      Under Title VII, there is no personal liability for employees,
5  including supervisors. Miller v. Maxwell's Intern. Inc., 991 F.2d
6  583, 587-88 (9th Cir. 1993)665, cert. denied, 510 U.S. 1109, 114
7  S.Ct. 1049 (1994)("This circuit...protect[s] supervising employees
8  from liability in their individual capacities").[9]  The Ninth
9  Circuit has also made clear that as to liability under Title VII,
10 "[t]here is no reason to stretch the liability of individual
11 employees beyond the respondeat superior principle intended by
12 Congress."[10]  Id. at 588.  See also Padway v. Palches, 665 F.2d
13 965, 968 (9th Cir. 1982)("[I]ndividual defendants cannot be held
14 for back pay."). This court is bound by Miller and Padway and must
15 dismiss the Title VII claims contained in causes of action one and
16 two against defendants Duterte and Edie. Miller, 991 F.2d at 588.
17 ///
18 ///
19 ///

20 _____

21      [9] In Miller, the Ninth Circuit held that a CEO and two general
   managers of a restaurant were not individually liable under Title
22 VII.  991 F.2d at 587.

23      [10] The Ninth Circuit explained that based on the statutory
   scheme of Title VII, "it is inconceivable that Congress intended
24 to allow civil liability to run against individual employees."
   Miller, 991 F.2d at 588.  The court reiterated that its ruling in
25 Padway "that individual defendants cannot be held liable for
   damages under Title VII is good law..." Id. at 587.

26

**b.   FEHA**

The court must dismiss the FEHA allegations against Edie and Duterte contained in claim one (discrimination), but sustain the FEHA claims against these individuals as to claims two and three (harassment and retaliation, respectively).

### i.   Discrimination Claim

In Reno v. Baird, 18 Cal.4th 640, 663 (1998), the California Supreme Court held that supervisors could not be held liable under FEHA's general anti-discrimination provision. The court articulated that it was concerned that "imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the existence of supervisory judgment." Id. at 651-52.

According to the court this concern was embodied in FEHA's statutory language and its varying approaches to harassment and discrimination claims. FEHA prohibits "an employer... or any other person" from harassing an employee, Cal. Gov. § 12940(j)(1), but prohibits only "an employer" from engaging in improper discrimination. Id. at § 12940(a). The court explained that "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives...discrimination claims, by contrast, arise out of the performance of necessary personnel management duties." Reno, 18 Cal.4th at 645-46 (quotation omitted). To avoid creating

8

1    supervisory conflicts of interest and a chilling of effective

2    management, the court concluded that the Legislature did not intend

3    to hold supervisors liable for unlawful discrimination. Id. at 654.

4         In her first claim, plaintiff avers that "[d]efendants and

5    each of them engaged in conduct or carried out affirmative policy

6    or condoned unlawful conduct" pursuant to FEHA. Specifically, she

7    contends that her "race was the motivating factor" in defendants'

8    decision to prevent her from being promoted, advancing, and in

9    their decision to terminate her.  Compl. at 4-5.  Based on the

10   unambiguous language in Reno, the court must dismiss plaintiff's

11   FEHA discrimination claims against Duterte and Edie.

12              ii.  Harassment Claim

13        In her second claim, plaintiff alleges that defendants,

14   including Duterte and Edie, "by their acts and/or omissions,"

15   failed to "end the harassment and hostile work environment."

16   Compl. at 6.  Although the court in Reno alluded to it, it did not

17   hold that employees could not be liable for harassment.  In 2001,

18   however, the California Legislature amended FEHA's harassment

19   provision expressly holding individual employees liable for their

20   harassment.  See Cal. Gov.Code § 12940(j)(3); Page v. Superior

21   Court, 31 Cal.App.4th 1206 (1995)("As to supervisors...the language

22   of FEHA is unambiguous in imposing personal liability for

23   harassment or retaliation in violation of FEHA."); Winarto v.

24   Toshiba American Electronics Components, Inc., 274 F.3d 1276, 1288

25   (9th Cir. 2001)(citing Page).  Thus, although individual defendants

26   move for dismissal as to all FEHA claims,  that motion must be

9

1  DENIED as to the harassment claim contained in the second cause of

2  action.

3           **iii.  Retaliation Claim**

4       In her third claim, plaintiff alleges, <u>inter</u> <u>alia</u>, that she

5  has been "retaliated against by defendants as a result of having

6  made complaints of discrimination, harassment, and retaliation."

7  Defendants contend that all FEHA claims against Duterte and Edie

8  must be dismissed, citing <u>Reno</u>.  I cannot agree.  The <u>Reno</u> court

9  focused on FEHA's antidiscrimination provision, which prohibits

10 only an "employer" from discriminating in hiring and employment

11 decisions.  Cal Gov't Code § 12940(a).  Although it does not appear

12 that the California Supreme Court has directly addressed this

13 issue, the Ninth Circuit has held that "an individual-supervisor

14 may be held personally liable for retaliation under FEHA." <u>Winarto</u>

15 <u>v. Toshiba Am. Elec.</u>, 274 F.3d 1276, 1288 (9th Cir. 2001)(citing

16 <u>Fisher v. San Pedro Peninsula Hosp</u>., 214 Cal.App.3d 590 (1989) and

17 <u>Page</u>, 31 Cal.App.4th 1206, <u>supra</u>).  The court explained that the

18 retaliation provision of FEHA applies to "any employer labor

19 organization, employment agency, or *person."*  Cal. Gov't Code §

20 12940(h)(emphasis in original).  <u>Id</u>.  Giving "person" its ordinary

21 meaning, supervisors and individual employees can be held for

22 retaliation under § 12940(h).  <u>Id</u>.  Accordingly, Duterte's and

23 Edies' motion to dismiss the FEHA retaliation claims against them

24 contained in plaintiffs' third cause of action must be DENIED.

25 ///

26 ///

                                  10

1  **B.   VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING(Claim**

2  **4)**

3       Defendants contend that under California law, the terms and

4  conditions of public employment are controlled by statute rather

5  than contract. Mot. at 5.  They argue that plaintiff may not state

6  a cause of action for breach of the implied covenant of good faith

7  and fair dealing because "where there is no underlying contract,

8  there can be no duty arising from the implied contract"(citation

9  omitted).  Id. Having examined the relevant authority, the court

10  concludes that defendants are correct.

11       Every contract contains an implied covenant of good faith

12  and fair dealing that "neither party will do anything that injures

13  the right of the other to receive the benefit of [their] bargain."

14  Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654, 358 (1958).

15  The covenant of good faith and fair dealing arises out of the

16  contract itself and protects the express contractual promises of

17  the contract, rather than to protect a general public policy

18  interest not directly tied to the contract's purposes. Foley v.

19  Interactive Data Corp., 47 Cal.3d 654, 690 (1988).  Since the good

20  faith covenant is an implied term of a contract, the existence of

21  a contractual relationship is prerequisite for any action for

22  breach of the covenant. Smith v. City and County of San Francisco,

23  225 Cal.App.3d 38, 49 (1990).

24       Notably, plaintiff has not brought a breach of contract claim.

25  She has also not alleged  - nor could she - that her employment is

26  governed by contract.  In California, public employment is held not

1   by contract, but by statute.  Miller v. State of California, 18

2   Cal.3d 808, 813 (1977). Relying on Miller, the California Supreme

3   Court has made clear that civil service employees cannot state a

4   cause of action for breach of contract or breach of the implied

5   covenant of good faith and fair dealing. Shoemaker v. Myers, 52

6   Cal.3d 1, 23-24 (1990).  This same general principle of law applies

7   to civil service and noncivil service public employees alike. Hill

8   v. City of Long Beach, 33 Cal.App.4th 1684, 1690 (1995).  Plaintiff

9   pleads that defendant CHHS and the County are "public entities and

10  municipalities."  Compl. at 3.  She further avers that she is

11  employed by defendant as an "Employment Resource Specialist."

12  Given that plaintiff was a public employee whose terms of

13  employment is governed by statute, she cannot state a cause of

14  action for breach of the implied covenant of good faith and fair

15  dealing.  Shoemaker, supra.  Defendants' motion to dismiss

16  plaintiff's fourth cause of action must be GRANTED.

17  **C.  DISCIPLINE AND WRONGFUL TERMINATION IN VIOLATION OF PUBLIC**

18  **POLICY (CLAIMS 7, 11, 12)**

19      The elements of a claim for wrongful discharge in violation

20  of public policy are: 1) an employer-employee relationship, 2)

21  termination or other adverse employment action, 3) the termination

22  of the plaintiff's employment was in violation of public policy,

23  4) the termination was a legal cause of the plaintiff's damages,

24  and 5) the nature and extent of plaintiff's damage. Homes v.

25  General Dynamic Corp., 17 Cal.4th. 1418, 1426 (1993). Defendants

26  contend that plaintiff's seventh ("Employment Practices -Discipline

in Violation of Public Policy"), eleventh ("Wrongful Termination
in violation in violation of public policy"), and twelfth
("Wrongful Termination") claims must be dismissed for various
reasons.  The court addresses their contentions below.[11]

First, defendants argue plaintiff's twelfth claim, "wrongful
termination," wherein plaintiff claims she was "terminated in
violation of the County's and Department's representation and
promise 'that she would only be terminated for cause and benefit
of progressive discipline'" [sic], does not refer to any public
policy.  In order to prevail on a wrongful termination claim under
California law, a plaintiff must plead and prove as one element of
that claim that a fundamental public policy exists that is
"delineated in constitutional or statutory provisions..." <u>Gantt v.</u>
<u>Sentry Ins.</u>, 1 Cal.4th 1083 (1992). In her twelfth claim, plaintiff
"realleges and incorporates paragraphs 1 through 62 of the
complaint," and those paragraphs include allegations that
defendants have violated various statutes and constitutional
provisions, including Title VII, FEHA, Art. I, §§ 7-8 of the

_____

[11] Plaintiff brings a wrongful discipline claim in the seventh
cause of action.  The tort of wrongful discipline in violation of
public policy has been recognized by California courts. <u>See</u>, <u>e.g.</u>,
<u>Garcia v. Rockwell Internat. Corp.</u>, 187 Cal.App.3d 1556, 1561-1562
(1986). The claim is similar to a wrongful discharge claim.  A
plaintiff's claim that the defendant's wrongful discipline claim
violated public policy must allege the policy is: "(1) delineated
in either constitutional or statutory provisions; (2) 'public' in
the sense that it 'inures to the benefit of the public' rather than
serving merely the interests of the individual; (3) well
established at the time of the discharge [or discipline]; and (4)
substantial and fundamental." <u>Stevenson v. Superior Court,</u>  16
Cal.4th 880, 894 (1997).

13

1  California Constitution.  Defendants' motion to dismiss the twelfth

2  claim on this account must be denied.

3       Secondly, defendants argue that claims seven, eleven, and

4  twelve must be dismissed because they are immune under Cal. Gov't

5  Code § 815.   Section 815 states that "[e]xcept as otherwise

6  provided by statute: [¶] (a) A public entity is not liable for an

7  injury, whether such injury arises out of an act or omission of the

8  public entity or a public employee or any other person."[12]

9  Defendants assert that plaintiff's constructive discharge and

10 discipline claims in violation of public policy are common law

11 claims that come within the purview of § 815. Defendants' argument

12 is unavailing.

13      The court notes that all three claims make mention that

14 defendants have violated FEHA, and it is well-established that FEHA

15 applies to public entities. State Personnel Bd. v. Fair Employment

16 & Housing Com., 39 Cal.3d 422 (1985).   The California Supreme

17 Court has allowed wrongful discharge claims to be brought against

18 public entities, particularly where FEHA violations have been

19 alleged. In City of Moorpark v. Superior Court, 18 Cal.4th 1143,

20 1148 (1998), the California Supreme Court recognized that both FEHA

21 and common law wrongful discharge remedies were available to a city

22 employee who suffered discrimination based on work-related

23 disability.  The wrongful discharge claim was not barred by §

24 815(a) or any other statutory immunity potentially available to the

25 ─────────────

26      [12] Tort liability of public entities in California is governed
by the Tort Claims Act, CA Gov't Code §§ 815(a), et seq.

1  city.  In addition, although defendant cites to <u>Palmer v. Regents</u>

2  <u>of Univ. of California</u>, 107 Cal.App.4th 899, 909 (2003), for the

3  proposition that a wrongful discharge claim cannot be asserted

4  against a public employer, this case is inapposite to the instant

5  matter.[13]

6      Finally, defendants argue that these three claims must be

7  dismissed against individual defendants Duterte and Edie because

8  "only an employer can be liable for the tort of wrongful

9  discharge."  Mot. at 6.  Defendants cite to <u>Khajavi v. Feather</u>

10 <u>River Anesthesia Med. Group</u>, 84 Cal.App.4th 32, 38-39 (2000).

11 <u>Khajavi</u> provides no support for defendants' assertion.[14]

12     For the reasons set forth above, the court DENIES defendants'

13 motion to dismiss as to claims seven, eleven, and twelve.[15]

14 ───────────────

15     [13] The court in <u>Palmer</u> specifically stated that it would not
   address whether § 815(a) bars a wrongful discharge claim.  <u>Id</u>. at
16 910 ("Because this court previously concluded Palmer had stated a
   common law cause of action for wrongful discharge in violation of
17 public policy, we do not hold the Regents are immune from her
   Tameny action under section 815").  Furthermore, even a cursory
18 examination of <u>Palmer</u> reveals that the court dismissed the wrongful
   termination claim because plaintiff failed to exhaust internal
19 grievance procedures, not because of any statutory immunity
   provided under § 815(a).  <u>Id</u>. at 903.

20     [14] There, a California appellate court dismissed a wrongful
   discharge claim against defendant because plaintiff was never
21 employed by defendant and had no employment relationship
   whatsoever with defendant.  <u>Id</u>. at 53 ("Robert Del Pero had no
22 employment relationship with Khajavi").  The court never addressed
   whether individual supervisors of an employer may be liable for
23 wrongful discharge claims.  Defendants fail to direct the court to
   any authority which supports its argument that a wrongful discharge
24 claim cannot be asserted against individual employees or
   supervisors.

25
   
26     [15] Defendants do not claim that plaintiff failed to exhaust an
   established remedy.  Thus, this is not a ground to dismiss.  On the

15

**D.   VIOLATION OF ARTICLE I, §§ 7 AND 8 OF THE CALIFORNIA CONSTITUTION (CLAIMS 8,9)**

Defendants move to dismiss plaintiffs' claims for relief under Art. §§ 7, 8 of the California Constitution.  After reviewing the relevant case law, the court GRANTS the motion as to § 7, but DENIES the motion as to § 8.

**a. Art. I, § 7 of the California Constitution (Eighth Claim)**

Plaintiff asserts in her eighth claim that the "intentional failure to remedy unequal treatment violates plaintiff's rights to equal protection of the laws guaranteed by Art. I, Section 7.[16]" Compl. at 11-12.  Defendants contend that plaintiff may not sue for

---

other hand, it is difficult for the court to understand why a separate cause of action is premised on FEHA, and why a separate tort gains anything for plaintiff.  Of course it is up to the parties to sort through such questions.

[16] Section 7(a) states, in pertinent part:

A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation.

Although plaintiff does not make clear whether she brings her claim under § 7(a) or § 7(b), it does not appear that § 7(b) would apply given plaintiffs' pleadings of "unequal treatment."  Section 7(b) states that "[a] citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens."  Plaintiff makes no mention of any privilege or immunity, only that she was treated unfairly, which appears to fall within the purview of the "liberty," "due process," and "equal protection" rights guaranteed under § 7(a).

1  damages based upon this Constitutional violation.  Their argument
2  is well-taken.  In Katzberg v. Regents of Univ. of California, 29
3  Cal.4th 300 (2002), the California Supreme Court barred plaintiff
4  from seeking damages for any violation of his state constitutional
5  right to due process under § 7(a).  The court stated that "there
6  is no indication in the language of Article I, section 7(a), nor
7  any evidence in the history of that section, from which we may
8  find, within that provision, and implied right to seek damages..."
9  Id. at 325.  The court also found "no basis upon which to recognize
10 a constitutional tort action for such damages" under Section 7(a).
11 Id. at 329.  It is clear from plaintiff's complaint that she seeks
12 only monetary damages in this suit (special damages, general and
13 compensatory damages, prejudgment interest, punitive damages, back
14 pay and front pay; reasonable attorneys' fees).  Because the court
15 may not grant the relief plaintiff seeks as to this claim, it must
16 be DISMISSED.

17        **b.  Art. I, § 8 of the California Constitution (Ninth Claim)**

18        Article I, section 8 of the California Constitution states:
19 "A person may not be disqualified from entering or pursuing a
20 business, profession, vocation, or employment because of sex, race,
21 creed, color, or national or ethnic origin."  Defendant argues that
22 this claim must be dismissed because, like Art. I, § 7, this claim
23 "does not create a separate cause of action for damages."  Mot. at
24 7.  Again, plaintiff fails to respond to this argument in her
25 opposition brief.  Defendants' motion to dismiss must be DENIED as
26 to this claim, however, because they cite no relevant authority for

17

1  their argument that damages are not allowed under § 8.

2      Defendants cite to <u>Himaka v. Buddhist Churches of America</u>, 919

3  F.Supp.332, 334-35 (N.D. Cal. 1995)(Jensen, J.).  Nowhere in its

4  opinion did the district court conclude that monetary damages are

5  not allowed under Section 8.  Further, it appears to the court that

6  <u>Himaka</u> actually undermines defendants' argument.  The district

7  court in <u>Himaka</u> stated that there may not be a "direct cause of

8  action arising under Section 8," and that it must be "asserted

9  through a state tort law mechanism," such as wrongful termination

10  in violation of public policy.  <u>Id.</u> at 335.  Plaintiff has done

11  just that.  She has incorporated paragraphs 1 through 50 in her

12  ninth claim, which includes claims for wrongful termination in

13  violation of public policy.  Thus, according to <u>Himaka</u>, plaintiff

14  has indeed asserted her § 8 claim through a state tort law

15  mechanism in order to bring a private cause of action.  <u>See</u>

16  <u>Phillips v. Saint Mary's Regional Med. Center</u>, 96 Cal.App.4th 219

17  (2002)(Art. I, Sec. 8 is an alternative source of public policy for

18  wrongful termination in violation of public policy claims).

19  Defendants' arguments must be rejected and their motion to dismiss

20  must be DENIED as to this claim.

21  **E.  CALIFORNIA GOVERNMENT CODE § 12948 (Tenth Claim)**

22      Plaintiff's tenth claim for relief asserts a violation of

23  California Government Code § 12948. That section provides that it

24  "is an unlawful practice…for a person to deny or to aid, incite,

25  or conspire in the denial of the rights created by Section 51,

26  51.5, 51.7, 54, 54.1, or 54.2 of the Civil Code." Again, defendants

1  raise a number of arguments that are unavailing.

2      Defendants contend that this section prohibits discrimination

3  only by employers, and not individuals, and so the § 12948 claim

4  must be dismissed as to Edie and Duterte.  I cannot agree.

5  Defendants cite to <u>Reno</u>, <u>supra</u> 18 Cal.4th at 644, for this

6  proposition, but this case offers no support for their position.

7  <u>Reno</u> stands for the proposition that the FEHA anti-discrimination

8  provision, § 12940(a), allows persons to sue and hold liable their

9  employers, but not individuals.  <u>Reno</u> makes no mention of § 12948,

10  a different FEHA provision.

11      Defendants make several more arguments that the court must

12  reject.  First, defendants direct the court once again to CA Gov't

13  Code § 815(a), implying that this provision bars plaintiff's §

14  12948 claim because it is being brought against public entities.

15  Specifically, defendants maintain that this provision does not

16  "abrogate the immunity provided a public entity from liability from

17  the act or omissions of the public entity or a public employee set

18  forth in Government Code § 815(a)."  Mot. at 8 (internal quotations

19  omitted).  Section 815(a) "eliminates *common law* governmental

20  liability," <u>Levine v. City of Los Angeles</u>,  68 Cal.App.3d 481

21  (1977) (emphasis noted). Because a claim brought under Gov't Code

22  § 12948 is brought under a California statute, and not the common

23  law, § 815(a) has no application here.  Defendants also assert that

24  § 12948 is not cognizable against individual public employees, but

25  provide no authority whatsoever for this argument. Mot. at 8.

26  Given that the statute speaks of "a person," it would appear by its

19

1  terms to apply to the individual defendants.

2      For the reasons set forth above, defendants' motion to dismiss

3  § 12948 must be DENIED.

4  **F.  NEGLIGENT HIRING, SUPERVISION, TRAINING & NEGLIGENT INFLICTION**

5  **OF EMOTIONAL DISTRESS (CLAIMS 6, 13)**

6      Defendants move to dismiss both negligence claims brought by

7  plaintiff in this suit.   They argue that "[n]egligence by an

8  employer is expressly covered under the exclusively provisions of

9  the California Worker's Compensation statutes." Mot. at 9.   This

10  argument cannot lie.   The workers' compensation law does not bar

11  claims based on same acts or allegations of a negligent response

12  to harassment or discrimination claims because these claims are

13  based on accusations of discrimination, which "is not a normal risk

14  of the compensation bargain." Fretland v. County of Humboldt, 69

15  Cal.App.4th 1478, 1492 (1999); See Maynard v. City of San Jose, 37

16  F.3d 1396, 1405 (9th Cir. 1994)("Personal injury claims that

17  implicate fundamental public policy considerations are not

18  preempted by the Workers' Compensation Act").   Here, plaintiff's

19  two negligence claims are premised upon allegations of

20  discriminatory conduct.   Compl. at 10 and 14.   Therefore,

21  plaintiff's sixth and thirteenth causes of action for negligence

22  are still at issue as to the entity defendants regardless of the

23  applicability of any exceptions to the workers' compensation

24  exclusivity provisions. See Fretland, supra (holding that the

25  workers' compensation exclusivity provisions do not bar emotional

26  distress claims founded on discrimination).

1       Defendants additionally contend that the all defendants are

2   immune from these negligence claims under § 815.2(b) of the

3   California Tort Claims Act.  Mot. at 10.  I cannot agree.

4   Section 815.2(b) merely states that where a public entity's tort

5   liability is derivative of employee liability, that public entity

6   is also liable.   Defendants argue that an employee or former

7   employee "cannot sue individual employees based on their conduct,

8   including acts or words relating to personnel actions," citing

9   Sheppard v. Freeman 67 Cal.App.4th 339, 347 (1988), and thus,

10  because the individual employees cannot be liable, the County and

11  CHHS cannot be liable.   As I have previously explained, in

12  resolving questions of California law, this court "is bound by the

13  pronouncement of the California Supreme Court and the opinions of

14  the California Courts of Appeal are merely data for determining how

15  the highest California court would rule...in the absence of other

16  evidence, the opinions of California courts of appeal on questions

17  of California law cannot simply be ignored."  Brewster v. County

18  of Shasta, 112 F.Supp.2d 1185, 1188 n. 5 (E.D. Cal. 2000)(Karlton,

19  J.)(citations omitted).

20      In the instant case other evidence exists.  A district court

21  has already rejected Sheppard as overly broad.   See Graw v. L.A.

22  County Metro. Transp. Auth., 52 F.Supp.2d 1152 (C.D. Cal.

23  1999)(Pregerson, J.).  Moreover, Sheppard itself contains "other

24  evidence" - namely, the dissenting opinion of presiding Justice

25  Kremer.  I conclude that other evidence justifies an independent

26  examination of the issue.

1    Upon individual examination, the court finds Judge Pregerson's
2    opinion more persuasive and thus I must reject Sheppard.
3    Nonetheless, questions exist.  It appears to the court that
4    plaintiff's claims must be dismissed.  Plaintiff alleges negligence
5    on the part of these defendants resulting in discrimination.  The
6    allegation is a non sequitur.  Discrimination is an intentional act
7    and not the result of negligence.

8    Plaintiff brings negligence and discrimination claims against
9    all defendants, including Edie and Duterte, but her poorly pled
10   complaint fails to analyze the various claims as to the each
11   defendant.  See Compl. at 4-5, 9-10, 14-15.  An employer may be
12   liable for both negligence and intentional discrimination committed
13   by an employee within the scope of his or her employment under
14   vicarious liability principles.  See Burlington Indus., Inc. v.
15   Ellerth, 524 U.S. 742, 756(1998)("An employer may be liable for
16   both negligent and intentional torts committed by an employee
17   within the scope of his or her employment"); New Orleans, M., &
18   C.R. Co. v. Hanning, 15 Wall. 649, 657,(1873)("The principal is
19   liable for the acts and negligence of the agent in the course of
20   his employment, although he did not authorize or did not know of
21   the acts complained of"); Rosenthal & Co. v. Commodity Futures
22   Trading Comm'n, 802 F.2d 963, 967 (7th Cir. 1986) ("'respondeat
23   superior' ⋯ is a doctrine about employers ⋯ and other
24   principals"); Restatement (Second) of Agency § 219(1) (1957).[17]

25

26   [17] The rule that an employer may be liable for both negligence
and intentional discrimination committed by an employee within the

1  Thus, plaintiff may allege both negligence and intentional
2  discrimination against the county and CHSS.

3      Plaintiffs' allegations that individual defendants committed
4  both negligence and intentional discriminatory acts in this case,
5  however, cannot lie.  In the employment context, a claim for
6  negligence requires the existence of a legal duty of care by an
7  employer to an employee, a breach of that claim, proximate
8  causation of plaintiff's damages, and damages. Federico v. Superior
9  Court, 59 Cal.App.4th 1207, 1204 (1997). A negligence claim thus
10 rests on the breaching of a duty where the defendant knows or
11 should know of facts which would warn of wrongdoing, and fails to
12 do so.  If plaintiff alleges that Edie and Duterte had such a duty
13 and that they breached that duty to warn of wrongdoing, they also
14 cannot allege that these two defendants committed the wrongdoing
15 which, in this case, are the discriminatory acts.  It simply makes
16 no logical or factual sense.

17     Defendants' motion to dismiss the sixth and thirteenth causes
18 of action must GRANTED as to Edie and Duterte.

19 **G.   DEFAMATION (Claim 14)**

20     Defendants argue that plaintiffs have failed to specify the
21 alleged defamatory statement at issue, and thus, her fourteenth

22 _____

23 scope of his or her employment also applies under California law.
24 See John Y. v. Chaparral Treatment Center, Inc., 101 Cal. App. 4th
   565 (2002), review denied, (2002); Saks v. Charity Mission Baptist
25 Church, 90 Cal.App.4th 1116 (2001), as modified on denial of
   reh'g,(Aug. 21, 2001); Depew v. Crocodile Enterprises, Inc., 63
26 Cal.App.4th 480 (1998). Bussard v. Minimed, Inc., 105 Cal.App.4th
   798 (2003). Yamaguchi v. Harnsmut, 106 Cal.App.4th 472 (2003).

1   claim must be dismissed.  To state a claim for defamation (either

2   libel or slander), plaintiff must establish "the intentional

3   publication of a statement of fact that is false, unprivileged, and

4   has a natural tendency to injure or which causes special damage."

5   Smith v. Maldonado, 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397

6   (1999); Cal. Civ.Code §§ 45-46. Publication means "communication

7   to a third person who understands the defamatory meaning of the

8   statement and its application to the person to whom reference is

9   made." Id. In addition, under California law to state a claim for

10   libel, a plaintiff must plead the alleged libelous words. Okun

11   v.Super. Ct., 29 Cal.3d 442, 458(1981).

12      Under California law, the defamatory statement must be

13   specifically identified, and the plaintiff must plead the substance

14   of the statement.  Jacobson v. Schwarzenegger, 357 F.Supp.2d 1198,

15   1216 (C.D.Cal. 2004).  Even under the liberal federal pleading

16   standards, "general allegations of the defamatory statements" that

17   do not identify the substance of what was said are insufficient.

18   See Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F.Supp.

19   1303, 1314 (N.D.Cal.1997) (holding that "the words constituting a

20   libel or slander must be specifically identified, if not pleaded

21   verbatim").

22      Here, plaintiff alleges that defendants "published false

23   information about plaintiff's performance and falsely accused

24   plaintiff of dishonesty and lack of integrity." Compl. at 15.  It

25   is clear that plaintiff complains about statements allegedly made

26   about her performance at work and her character.  Although terse,

1  her allegations are sufficient to provide defendants sufficient

2  notice of the issues to enable preparation of a defense.  See Okun,

3  supra.  The motion to dismiss the defamation claim must be DENIED.

4                                **V.**

5                            **CONCLUSION**

6      As consistent with the order, the court GRANTS in part, and

7  DENIES in part defendants' motion to dismiss.

8      Given the fact that many of the causes of action are not

9  separately stated, the court will dismiss the complaint and grant

10 plaintiff thirty (30) days from the date of this order to file an

11 amended complaint, consistent with this order.[18]

12 IT IS SO ORDERED.

13 DATED:  September 1, 2006.

14

15

16                        LAWRENCE K. KARLTON
                          SENIOR JUDGE
17                        UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25  _____

26      [18] Plaintiff's counsel is admonished that the court will not
    look kindly upon the addition of frivolous claims.

                                25