UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TASHA SCOTT,

                                    NO. CIV. 06-1216 LKK/EFB

          Plaintiff,

     v.

SOLANO COUNTY HEALTH AND SOCIAL          O R D E R
SERVICES DEPARTMENT, SOLANO
COUNTY, PATRICK DUTERTE and
TRISH EDIE, et al,

          Defendants.

_____/

     The plaintiff is a former employee of the Solano County Health and Social Services Department. She has brought suit against the County, the Department, and two individual defendants for their alleged illegal actions during her employment and termination.

     Pending before the court is a motion for summary judgment on all claims brought by all defendants. For the reasons stated herein, the court grants the motion in part and denies the motion in part.

////

1

## I. FACTS[1]

Plaintiff is an African-American woman. Declaration of Tasha Scott In Opposition to Defendant's Motion for Summary Judgment ("Scott Decl.") ¶ 3. She began working as an Employment Resource Specialist I ("ERS I") at the Solano County's Health & Social Services Department ("H&SS") in the Vallejo Office on July 9, 2002. Id. ¶ 4. Although the parties dispute the exact date, plaintiff was promoted to Employment Resource Specialist II ("ESR II") sometime between January and February 2003. Id. ¶ 11; Declaration of Susan Kosar In Support of Defendants' Motion for Summary Judgment ("Kosar Decl.") ¶ 3. Part of plaintiff's responsibilities as an ERS I and ESR II was to interview applicants for the CALWORKS benefits program and explain the CALWORKS regulations. SUF ¶¶ 3, 26. On June

---

[1] Plaintiff and defendants each have lodged objections to several items of evidence relied on by the other. Some of this evidence is not necessary to the resolution of the instant motion. To the extent that they are relevant and the court has relied on them herein, those objections are OVERRULED. Moreover, the court disregards those objections raised by the plaintiff that were filed beyond the filing deadline ordered by the court in its July 1, 2008 Order to Show Cause.

Defendants have also moved that the court take judicial notice of a California State Bar case. A court may take judicial notice of a fact not subject to reasonable dispute pursuant to Federal Rules of Evidence 201(b) and 201(d). Here, the defendants have made no showing that the State Bar case is relevant to the summary judgment motion. Accordingly, the request is DENIED.

Finally, the plaintiff has sought in her opposition memorandum and in separate filings (Doc. Nos. 89, 91) to withdraw or amend admissions under Federal Rule of Civil Procedure 36(b). Plaintiff had failed to timely respond to defendants' requests for admission, resulting in those matters being deemed admitted. Here, withdrawl of the admissions promotes presentation of the merits of the action and would not unduly prejudice the defendant, as the trial is not set to begin until January 2009. Accordingly, plaintiff's request to withdraw those admissions is GRANTED.

18, 2004, plaintiff transferred to the Vacaville office. Id. ¶ 9.

**A.   Plaintiff's Application to Temporary Positions**

In January 2004, plaintiff applied for the following temporary positions: Employment/Eligibility Services Manager; Employment Resources Specialist Supervisor; and an Employment Resources Specialist III (Lead Worker). SUF ¶ 10. The selection process for these temporary positions was informal, but each candidate had to meet the minimum qualifications for the position to be selected. Declaration of Peggy Silva In Support of Defendants' Motion for Summary Judgment ("Silva Decl.") ¶¶ 4-5. Sheri Toy and Peggy Silva were responsible for filling temporary supervisory positions. SUF ¶ 93. A memorandum was sent to County employees informing them of the positions and instructing interested employees to submit a letter of interest. Silva Decl. ¶ 5. Employees who expressed interest in the positions were interviewed by both Toy and Silva. Id. It is asserted by defendant that employees were selected based on how well they performed in their interview and whether they met the minimum qualifications for the position. Id. Silva decided which employees were selected. Id. She has declared that she believed that plaintiff did not meet the minimum eligibility requirements for the positions and did not recommend that she be selected. Id. ¶¶ 7-8.

After plaintiff was not selected for any of these positions, she contacted Rosemary Lewis, the Deputy Director, and inquired as to why she was not selected. Scott Decl. ¶ 15. She has declared that also spoke with Susan Kosar, her supervisor, who promised

3

1   plaintiff that she would inquire about the status of the positions.
2   Id. Plaintiff has testified that from this inquiry she expected
3   these individuals to understand that she was saying that they were
4   discriminating against her because of her race. SUF ¶ 123.
5   According to plaintiff, Kosar advised plaintiff not to speak to
6   either Peggy Silva or Rosemary Lewis directly because it would be
7   considered insubordination and failure to follow the proper chain
8   of command. Scott Decl. ¶ 15. Plaintiff has testified that she did
9   not know the race or the qualifications of the individuals chosen
10  for any of the promotions. Declaration of Laurence Angelo in
11  Support of Defendants' Motion for Summary Judgment ("Angelo Decl.")
12  ¶¶ 1-5, Ex. D (Scott Depo. at 57:7-60:23).

13  **B.   Plaintiff's Application to Permanent Positions**

14       In April and May 2004, Scott applied for the following
15  permanent positions: Employment/Eligibility Services Manager,
16  Employment Resources Specialist Supervisor, and an Employment
17  Resources Specialist III (Lead Worker). SUF ¶ 12. Silva was on the
18  interview panel responsible for selecting applicants for a
19  permanent Employment Resource Specialist Supervisor and Employment
20  Resource Specialist III position. Silva Decl ¶ 9. Based on
21  plaintiff's May 2004 application, Silva believed that plaintiff did
22  not have the necessary experience for the ERS Supervisor position,
23  and did not meet the minimum required experience for the ERS III
24  (Lead Worker) position. Id. ¶¶ 10-11. Silva has declared that she
25  did not recommend plaintiff for these permanent positions because
26  she believed plaintiff did not have the requisite experience, and

4

other candidates for the position were better qualified based on their experience and skills exhibited during their interview. <u>Id.</u> ¶ 12.

In April 2004, plaintiff also applied for a Contract and Program Specialist position. SUF ¶ 14. According to County records, Scott was disqualified from this position because her application did not indicate that she had the requisite experience or a degree with major course work in the preferred fields. SUF ¶ 91.[2]

Scott likewise participated in the Future Leaders Program in May 2004. Declaration of Marylon Boyd In Opposition to Defendants' Motion for Summary Judgment ("Boyd Decl.") ¶ 10, Ex. 11. This program is designed to provide non-supervisory employees opportunities to attend training and learn leadership and communication skills. Silva Decl. ¶ 14. Participants in the program were not guaranteed a promotion to a supervisory position. <u>Id.</u> Plaintiff declared that she was told that her participation would qualify her for supervisory and managerial positions. Scott Decl ¶ 12. Plaintiff also declares that Lewis, Silva, and Toy "led her to believe that participation in the program was for the purpose of filling the temporary positions." <u>Id.</u>

**C.   Basis of Plaintiff's Retaliation Claims**

According to plaintiff she became a target of retaliation

---

[2] The County records indicate that plaintiff also applied for the Social Worker III position in April 2004. SUF ¶ 14. Plaintiff claims that she did not apply for a Social Worker III position, and that the County tampered with her application to make it appear that she had. Scott Decl. ¶ 14. It is not clear why this issue is relevant to the issue before the court.

1  around August 2004. Scott Decl. ¶ 40. Plaintiff declared that Susan

2  Kosar began complaining about her work and claiming that plaintiff

3  was not completing her case load fast enough. Id. Based on her

4  supervision of plaintiff, Kosar declared that plaintiff "had

5  trouble meeting the regulatory guidelines due to the amount of time

6  she took to complete intake interviews with applicants." Kosar

7  Decl. ¶ 3. Plaintiff also declared that she complained about the

8  manner in which Susan Kosar, Trish Edie, Dave Madden and Karen

9  Glover selected cases for federal funding purposes. Scott Decl. ¶

10 42. In May, 2004 plaintiff likewise complained about her Spanish-

11 speaking clients who could not read and did not understand their

12 rights and responsibilities before signing a document containing

13 them. Id. Plaintiff complained to the lead worker Dave Madden that

14 signing the  document carried the possibility of felony convictions

15 for their violation. Id. Plaintiff believes that because of these

16 complaints she was harassed and retaliated against. Id. ¶ 17.

17 **D.   Plaintiff's Own Receipt of Benefits**

18     Plaintiff has been the Legal Guardian of her nephew Ershell

19 Franklin since he was four months old. Scott Decl. ¶ 21 Her nephew

20 qualified for Public Assistance benefits, and plaintiff declares

21 that defendants knew that she was a CALWORKS benefits recipient

22 before they hired her. Id. According to plaintiff, in January,

23 2004, new procedures were instituted for Public Assistance cases

24 including Quarterly Reporting. Id. ¶ 22. Plaintiff's understanding

25 was that the Quarterly cycle for reporting changes would run from

26 August 5, 2004 through November 5, 2004. Id. ¶ 23. On August 5,

2004, plaintiff signed and submitted a Quarterly Eligible/Status Report to renew her CALWORKS benefits. SUF ¶ 29. In this Report, plaintiff stated that she and Franklin moved to Vacaville on July 4, 2004. SUF ¶ 30. It was plaintiff's understanding that she could indicate changes to the permanent residence of the eligible child any time during the Quarterly cycle. Scott Decl. ¶ 23.

On August 9, 2004, plaintiff sent Franklin to reside with plaintiff's son, Jesse Jerome Scott, III, in Baton Rouge, Louisiana. SUF ¶ 34. According to plaintiff, at that time, she had not decided whether her nephew was going to live in Louisiana or in Vacaville. Scott Decl. ¶ 23. On August 16, 2004, she executed a "Custody Arrangement" whereby she gave "care, custody and control to my son, Jesse Jerome Scott III, of my nephew and legal charge, Ershell Lajuan Franklin . . . for the purpose of meeting any of his personal, education and emotional needs." SUF ¶ 36. The Custody Arrangement also provides that Franklin resided in Louisiana with plaintiff's son with her consent and permission. Declaration of Patrick Duterte In Support of Defendants' Motion for Summary Judgment ("Duterte Decl.") ¶ 7, Ex: B. The Custody Arrangement was notarized on August 17, 2004. SUF ¶ 38. Plaintiff claims that this document was only for the purpose of enrolling Franklin in school. Id. Franklin registered for school in Louisiana around August 23, 2007 and never returned to California as a resident. Id. ¶ 40.

On August 23, 2004, plaintiff met with Myrtle Boggan, an Employment Resource Specialist Supervisor with H&SS, regarding her Cash Aid benefits for Franklin. SUF ¶ 41. According to plaintiff

there was nothing new to report at this time since Franklin was not out of her home for more than 30 days, and she did not need to report his stay in Louisiana because she had not decided whether he would remain there. Scott Decl. ¶¶ 21-26. During the meeting plaintiff submitted a Statement of Facts for Cash Aid and signed it under penalty of perjury that the information she provided in the Statement was true, correct, and complete. SUF ¶ 42. Plaintiff also declared on this Statement under penalty of perjury that she understood her rights and responsibilities in the CALWORKS Cash Aid program. Id. ¶ 43. Plaintiff did not inform Boggan during the August 23, 2004 interview that Franklin was in Louisiana and was not currently physically living with her. SUF ¶ 48.

On September 9, 2004, Boggan requested the County Special Investigation Bureau to conduct an investigation into plaintiff's receipt of Cash Aid Benefits. SUF ¶ 50. In the course of the investigation, the County's Special Investigation Bureau contacted the school where Franklin was enrolled in Louisiana. Id. ¶ 53. Among the documents found in Franklin's school file was a notarized "custody arrangement" which stated that plaintiff's son, Jesse Scott III, had custody and control of Ershell Franklin. Id. ¶ 51.

Defendant Duterte, the Director of H&SS, declared that based on these findings, he believed that Scott knowingly and willfully failed to report that the only child eligible for whom she was receiving CALWORKS Cash Aid was no longer living with her. Duterte Decl. ¶ 8. On September 22, 2004, Duterte sent Plaintiff a Notice of Proposed Termination. SUF ¶ 60. She requested an oral response,

1 and a Skelly hearing was conducted by Defendant Duterte on October

2 4, 2004. Duterte Decl. ¶ 14. Taking into consideration Plaintiff's

3 responses at the hearing and the information provided by the County

4 Special Investigation Unit, Duterte decided to terminate

5 plaintiff's employment as an ERS II. Id. ¶ 16. Duterte believed

6 that plaintiff violated Solano County Civil Service Rule Section

7 IX, 9.02(g) (dishonesty) and Civil Service Rule IX, 9.02(m)

8 (willful violation of any of the provisions of the Civil Service

9 Ordinance, Civil Service Rules, or of the Personnel and Salary

10 Resolution). Id.

## II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER

## FEDERAL RULE OF CIVIL PROCEDURE 56

13 Summary judgment is appropriate when there exists no genuine

14 issue as to any material fact. Such circumstances entitle the

15 moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

16 see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

17 Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

18 summary judgment practice, the moving party

> always bears the initial responsibility of informing the
> district court of the basis for its motion, and
> identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of
> material fact.

23 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

24 R. Civ. P. 56(c)).

25 If the moving party meets its initial responsibility, the

26 burden then shifts to the opposing party to establish the existence

1   of a genuine issue of material fact. <u>Matsushita Elec. Indus. Co.</u>

2   <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>see also</u> <u>First</u>

3   <u>Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89

4   (1968); <u>Secor Ltd.</u>, 51 F.3d at 853. In doing so, the opposing party

5   may not rely upon the denials of its pleadings, but must tender

6   evidence of specific facts in the form of affidavits and/or other

7   admissible materials in support of its contention that the dispute

8   exists. Fed. R. Civ. P. 56(e); <u>see also</u> <u>First Nat'l Bank</u>, 391 U.S.

9   at 289. In evaluating the evidence, the court draws all reasonable

10  inferences from the facts before it in favor of the opposing party.

11  <u>Matsushita</u>, 475 U.S. at 587-88 (citing <u>United States v. Diebold,</u>

12  <u>Inc.</u>, 369 U.S. 654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>County of Tuolumme</u>

13  <u>v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001).

14  Nevertheless, it is the opposing party's obligation to produce a

15  factual predicate as a basis for such inferences. <u>See</u> <u>Richards v.</u>

16  <u>Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The

17  opposing party "must do more than simply show that there is some

18  metaphysical doubt as to the material facts . . . . Where the

19  record taken as a whole could not lead a rational trier of fact to

20  find for the nonmoving party, there is no 'genuine issue for

21  trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

22                          **III. ANALYSIS**

23      The defendants have moved for summary judgment on all of

24  plaintiff's causes of action. For the reasons stated herein, the

25  ////

26  ////

1  court grants the motion in part and denies it in part.[3]

2  **A.   Plaintiff's First Cause of Action**

3       Plaintiff's   first   cause   of   action   alleges   unlawful

4  discrimination under Title VII and California's Fair Employment and

5  Housing Act (FEHA) relative to defendants' failure to promote her

6  and the termination of her employment. Defendants' motion on this

7  claim is granted in part.

8       **1.   Termination of Plaintiff's Employment**

9       Plaintiff alleges wrongful termination based on her race in

10  violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e,

11  et seq. and California's Fair Employment and Housing Act. Under

12  Title VII it is unlawful for an employer to "discriminate against

13  any individual with respect to his compensation, terms, conditions,

14  or privilege of employment, because of such individual's race." 42

15  U.S.C.   2000e-2(a)(1)(2005).   "An   individual   suffers   'disparate

16  treatment' in ... employment when [s]he is 'singled out and treated

17  less favorably than others similarly situated on account of race

18  or any other criterion impermissible under [Title VII].'" Jauregui

19  v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988) (citing

20  Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th

21  Cir.   1982)).   Similarly,   under   the   FEHA,   an   employer   may   not

22  ────────────────────

23       [3] Unfortunately, plaintiff's memorandum in opposition to
     defendants' motion is disorganized, and frequently lacking in
24  substance. By virtue thereof the court has found it difficult to
     discern what evidence the plaintiff has tendered in support of her
     claims or even, in some instances, what plaintiff's arguments are.
25  The analysis contained herein is based on the court's best
     understanding of plaintiff's arguments, after reviewing her
26  memorandum and all evidence she has tendered in its support.

1  discriminate against an individual seeking, obtaining, or holding

2  employment, based on that employee's race. Cal. Gov't Code § 12920.

3  Claims of employment discrimination under the FEHA are analyzed

4  under the same framework as those brought under Title VII. <u>Brooks</u>

5  <u>v. City of San Mateo</u>, 229 F.3d 917 (9th Cir. 2000); <u>Beyda v. City</u>

6  <u>of Los Angeles</u>, 65 Cal. App. 4th 511, 517 (1998).

7       Title VII claims are analyzed in a three-part, burden shifting

8  framework. First, "the plaintiff must establish a prima facie case

9  of discrimination. If the plaintiff succeeds in doing so, then the

10 burden shifts to the defendant to articulate a legitimate,

11 nondiscriminatory reason for its allegedly discriminatory conduct.

12 If the defendant provides such a reason, the burden shifts back to

13 the plaintiff to show that the employer's reason is a pretext for

14 discrimination." <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634,

15 641 (9th Cir. 2003).[4] Evidence of pretext raises an issue of fact

16 which can only be resolved at trial. <u>St. Mary's Honor Center v.</u>

17 <u>Hicks</u>, 509 U.S. 502, 510-11 (1993).

18      Plaintiff can establish the prima facie case of disparate

19 treatment through the framework set forth in <u>McDonnell Douglas</u>

20 <u>Corp. v Green</u>, 411 U.S. 792 (1973). "To establish a prima facie

21 case of wrongful termination under <u>McDonnell Douglas</u>, plaintiff

22 must offer proof that: (1)[s]he was a member of a protected class;

23 _____

24      [4] The burden-shifting framework is not necessary where the
   plaintiff tenders direct evidence of the defendant's discriminatory
   intent. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002);

25 <u>Trans World Airlines v. Thurston</u>, 469 U.S. 111, 121 (1985). That
   alternative is not relevant here, where the plaintiff's evidence

26 tendered of discrimination is circumstantial.

1  (2)[s]he was performing [her] job in a satisfactory manner; (3)

2  [s]he suffered an adverse employment action; and (4) other

3  similarly-situated employees who were not members of the protected

4  class were treated more favorably." Aragon v. Republic Silver State

5  Disposal, Inc., 292 F.3d 654 (9th Cir. 2002). These factors, of

6  course apply to cases presenting such circumstances, and remain

7  flexible to accommodate the diverse factual circumstances

8  confronted in Title VII cases. McDonnell Douglas, 411 U.S. at 802

9  n. 13.

10      The burden on the plaintiff in making the prima facie case is

11  not great. As the Supreme Court has explained, the purpose of this

12  stage of the inquiry is to "eliminate the most common

13  nondiscriminatory reasons" for defendant's actions. Texas Dep't of

14  Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

15  Consequently, "summary judgment would only be appropriate at this

16  stage of the litigation if plaintiff had failed to proffer

17  sufficient evidence to permit a trier of fact to conclude that each

18  of the required elements have been satisfied." United States v.

19  California Dept. of Corrections, 1990 WL 145599 (E.D. Cal. Feb. 7,

20  1990).

21      Here, defendants do not dispute plaintiff is African-American,

22  a class protected under Title VII or that they terminated

23  plaintiff's employment. The County, however, contends plaintiff has

24  not proffered sufficient evidence that she was treated differently

25  than similarly situated employees who are not African-American. To

26  establish the fourth element of the prima facie case, Plaintiff

13

1   must demonstrate that similarly situated employees of any race were

2   treated better than her.[5] See Vazquez v. County of Los Angeles,

3   349, 349 F.3d 634, 641 (9th Cir. 2003).  As is explained below,

4   despite plaintiff's minimal burden in making a prima facie case,

5   she has not made a showing sufficient to meet defendants' motion.

6        The crux of plaintiff's argument appears to be that defendants

7   terminated her employment based on her continued receipt of

8   CALWORKS benefits when she was no longer eligible to receive them.

9   She appears to argue that defendants improperly investigated her

10  receipt of CALWORKS benefits because of racial animus, and then

11  used the results of this investigation to justify her termination.

12  Plaintiff, however, has not tendered any evidence from which a

13  reasonable jury could conclude that defendants' investigation was

14  conducted differently than it would be for an individual of another

15  race. Plaintiff has failed to point to evidence establishing that

16  any non African-American employee who had been suspected of

17  improperly receiving benefits for which she was no longer eligible

18  was disciplined in a more favorable way. Plaintiff has declared

19  that she knows of "other similarly situated Caucasian employees who

20  have violated work rules and policies" and were treated more

21  favorably than her. Scott Decl. ¶ 29. She does not offer any

22  factual evidence to support this assertion. On the other hand, the

23  defendants point out that according to Georgia Cochran, County

24

25       [5] I do not explore the contours of "similar" because it is not
    an issue in this case. I pause only long enough to note that
26  "similar" is not the same as identical.

1   records indicate that in the late 1980s a female Caucasian employee

2   was terminated for welfare fraud for collecting welfare benefits

3   when she was not eligible. Declaration of Georgia Cochran In

4   Support of Defendants' Motion for Summary Judgment ("Cochran

5   Decl.") ¶ 23. This portion of the declaration, without the records

6   themselves, is hearsay and thus cannot support a motion for summary

7   judgment. See Bieghler v. Kleppe, 633 F.2d 531, 522 (9th Cir.

8   1980); Rossi v. Trans World Airlines, Inc., 507 F.2d 404, 406 (9th

9   Cir. 1974); S & S Logging Co. v. Barker, 366 F.2d 617, 624 n. 7

10  (9th Cir. 1966).  Thus, under the present record, it is not at all

11  clear that plaintiff has failed to establish a prima facie case.[6]

12      Nonetheless, even if plaintiff had established a prima facie

13  case of discrimination under the McDonnell Douglas framework, the

14  motion would still have to be granted. The County has offered

15  evidence of a legitimate, nondiscriminatory reason for terminating

16  plaintiff. Defendants have tendered evidence that defendant Duterte

17  reviewed the findings of the investigation into plaintiff's

18  continued receipt of benefits for her nephew and concluded that

19  plaintiff's actions were, at best, unethical. Duterte Decl. ¶ 8.

20  He also declared that plaintiff's responses at the Skelly hearing

21  were not convincing, leading to his decision to terminate her

22  employment.  Id.  ¶ 16.  In reaching that conclusion Duterte

23  identified the County civil service rules that he believed the

24

25      [6] Plaintiff cannot be faulted for failing to produce evidence
    of unequal treatment if there is no evidence of any discipline of
26  similarly situated employees.

1  plaintiff violated. _Id._  All the above tenders a legitimate non-
2  discriminatory reason for plaintiff's termination. _See_, _e.g._,
3  _Vasquez_, 349 F.3d at 641 (plaintiff's failure to follow
4  supervisor's directives satisfied this prong on the _McDonnell_
5  _Douglas_ test).

6       To meet the defendants' showing plaintiff must tender
7  evidence raising a question as to whether defendants reasons were
8  pretextual, requiring trial. Plaintiff can show pretext "either
9  directly by persuading the court that a discriminatory reason more
10 likely motivated the employer or indirectly by showing that the
11 employer's proffered explanation is unworthy of credence." _Texas_
12 _Dep't of Cmty. Affairs_, 450 U.S. at 256.  In doing so, plaintiff
13 may, of course, rely on circumstantial evidence and may rely on the
14 same evidence used to establish the prima facie case. _Burdine_, 450
15 U.S. at 256 n. 10; _Domingo v. New England Fish Co._, 727 F.2d. 1429,
16 1435 (9th Cir. 1984), _modified_, 742 F.2d 520 (9th Cir. 1984). At
17 the summary judgment stage, the plaintiff need only "produce very
18 little evidence of discriminatory motive to raise a genuine issue
19 of fact as to pretext. In fact, any indication of discriminatory
20 motive may suffice to raise a question that can only be resolved
21 by a factfinder." _Warren v. City of Carlsbad_, 58 F.3d 439, 443 (9th
22 Cir. 1995) (internal quotations omitted); _see_ _also_ _Reeves v._
23 _Sanderson Plumbing Products, Inc._, 530 U.S. 133, 148 (2000). In
24 fact, a plaintiff may survive the defendant's summary judgment
25 motion simply with "quite persuasive" circumstantial evidence that
26 the defendants' proffered legitimate reason for the employment

1  action is not credible. <u>Reeves</u>, 530 U.S. at 146-49.

2  Here, the plaintiff has not produced even this minimal

3  evidence required to show that a resolution of the question of

4  pretext is proper by a factfinder. Plaintiff asserts as evidence

5  of pretext her own conclusion that the reasons provided for her

6  termination were a pretext. Scott Decl. ¶¶ 30, 38, 52. Without

7  more, such as an evidentiary basis for such a belief, this is

8  insufficient. <u>Collings v. Longview Fibre Co.</u>, 63 F.3d 828, 834 (9th

9  Cir. 1995).

10  Additionally, plaintiff has, perhaps, tendered as evidence in

11  support of her assertion, the decision of the California

12  Unemployment Insurance Appeals Board, affirming that the plaintiff

13  was eligible for unemployment benefits because she was not

14  terminated for "misconduct." Scott Decl. ¶ 50, Ex.8. The Board

15  based its decision on it conclusion that there was no evidence that

16  the plaintiff had engaged in criminal activity or that she had

17  processed her own benefit application.[7] <u>Id.</u>

18  The question is whether that decision of the Board suffices

19  to create a question for the trier of fact. California law

20  establishes that decisions of the Board are not *res judicata*. <u>Pratt</u>

21  <u>v. Local 683, Film Technicians etc.</u>, 260 Cal. App. 2d 545 (1968);

22  <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279 (9th Cir.

23  1986). Thus, the Appeals Board's decision it is not a prior factual

24  _____

25  [7] Given the circumstances, the Board's rational is difficult
   to credit; however, as I explain above, other reasons undermine the
26  plaintiff's contention that the Board's decision is evidence
   sufficient to defeat defendants' motion.

1   determination concerning the circumstances of the plaintiff's
2   discharge but rather is another fact finder's determination upon
3   application of criteria not relevant to the issue before this
4   court. Here the issue is not the right to unemployment benefits but
5   whether defendants' purported reason for terminating the plaintiff
6   was pretextual. The court concludes that the plaintiff's personal
7   belief coupled with the Board's determination is insufficient to
8   raise a question of fact that would permit a reasonable jury to
9   find in her favor on this issue. Accordingly, summary judgement
10  must be granted to the defendants' on the first cause of action,
11  to the extent that it alleges that they violated Title VII or the
12  FEHA in her termination.

13          **2.   Defendants' Failure to Promote Plaintiff**

14          Plaintiff's allegation that defendants' failure to promote her
15  violates Title VII and the FEHA is also governed by the burden-
16  shifting framework established in <u>McDonnel Douglas</u>. In order to
17  prove a claim of failure to promote, in violation of Title VII,
18  "[u]nder <u>McDonnell Douglas</u> plaintiff has the initial burden to
19  establish a prima facie case of racial discrimination by showing:
20  (1) that plaintiff belongs to a racial minority; (2) that plaintiff
21  applied and was qualified for a job for which the employer was
22  seeking applications; (3) that, despite plaintiff's qualifications,
23  plaintiff was rejected; and (4) that the job remained open" or was
24  filled by a person who was not a member of a protected class.
25  <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Hagans v. Andrus</u>, 651 F.2d 622,
26  625 (9th Cir. 1981). As stated above, the plaintiff's burden in

1  establishing a prima facie case is "not onerous." <u>Texas Dep't of</u>
2  <u>Community Affairs</u>, 450 U.S. at 253. "The function of the <u>McDonnell</u>
3  <u>Douglas</u> prima facie case is to eliminate the two most common
4  reasons why an applicant may be rejected: an absolute or relative
5  lack of qualifications, or lack of an open position." <u>Barefield</u>,
6  500 F. Supp. 2d at 1261 (citing <u>Int'l Broth. of Teamsters</u>, 431 U.S.
7  at 358 n. 44).

8      Once again if plaintiff establishes the prima facie case, the
9  burden shifts to the employer "to articulate a legitimate,
10  nondisciminatory reason for the plaintiff's rejection." <u>Barefield</u>,
11  500 F. Supp. 2d 1244 at 1260 (citing <u>Warren v. City of Carlsbad</u>,
12  58 F.3d 439, 442 (9th Cir. 1995)). The employer can accomplish this
13  by introducing  evidence of nondiscriminatory reasons for the
14  plaintiff's rejection. <u>Texas Dep't of Cmty. Affairs</u>, 450 U.S. at
15  255. "If the employer sustains this burden, the plaintiff must then
16  demonstrate that the proffered nondiscriminatory reason is merely
17  a pretext for discrimination" <u>Id</u>. Again, the immediate issue is
18  whether plaintiff has produced evidence requiring a trial of the
19  issue of pretext.

20      The plaintiff applied for the following positions: Employment
21  Eligibility Service Manager, Contract and Program Specialist,
22  Employment Resources Specialist III, Employment Resource Specialist
23  Supervisor. SUF ¶ 76. Plaintiff was not promoted to any of these
24  positions and alleges that she was discriminated against on the
25  basis of race.

26          **a.  Employment Eligibility Services Manager**

1    Plaintiff applied for the position of Employment Eligibility
2  Services Manager in April 2004. SUF ¶ 12. At that time she was a
3  ERS II with Solano County. The minimum qualification for the
4  position were three years of increasingly responsible experience
5  in a Public Assistance program of which one year was in a
6  supervisory capacity; a bachelors degree in social work, public
7  administration, business administration or a related field; and
8  knowledge of budget expenditure monitoring and the principles and
9  practices of public administration and program management,
10 including planning, implementation, and evaluation. Cochran Decl.
11 ¶ 6, Ex. A.

12    Even given the minimal nature of plaintiff's burden in
13 establishing her prima facie case, <u>Texas Dep't of Community</u>
14 <u>Affairs</u>, 450 U.S. at 253, plaintiff has not met her burden because
15 she has not shown that she was qualified for the position.
16 Plaintiff's application does not indicate that she had experience
17 in budget monitoring, evaluating program effectiveness, developing
18 goals and objectives for assigned work units, or preparing
19 narrative and statistical reports. <u>Id.</u> ¶ 7, Ex. B. The plaintiff's
20 application indicates that she had experience in caseload
21 management only. <u>Id.</u> She did not indicate having been in
22 supervisory capacity at any of her previous positions. <u>Id.</u> Thus
23 plaintiff has not met her prima facie burden to show that she was
24 qualified for this position.

25    Even if Scott had met her prima facie case, the County has
26 presented a legitimate nondiscriminatory reason for not promoting

plaintiff: she was not the most qualified applicant. See Barefield, 500 F. Supp. 2d 1244, 1261 (that a more qualified applicant was offered the position in question is a legitimate, non-discriminatory reason). The first applicant who was hired for the position had a bachelors degree in business administration and worked for seven years as an Eligibility Program Supervisor for H&SS Employment and Eligibility Services Department. Cochran Decl. ¶ 20, Ex. O. She also had more than five years of experience managing contracts and writing budgets. Id. The second successful applicant had a bachelors degree in business administration and over nine years of experience with the H&SS Department as an Eligibility Benefits Specialist Supervisor. Id. ¶ 20, Ex. P. Plaintiff has presented no countervailing evidence that this legitimate reason was pretextual.

Accordingly defendants' motion must be granted to the extent that plaintiff alleges that defendants violated Title VII and the FEHA by failing to promote her to the Employment Eligibility Services Manager position.

### b.   Contract and Program Specialist

In April 2004, plaintiff applied for the Contract and Program Specialist position. Cochran Decl. ¶¶ 20-21. The Contract and Program Specialist position required two years of progressively responsible business or contract administration experience and a degree from an accredited university with major upper division course work preferably in business, public administration, finance or accounting. Id. ¶ 10, Ex. E. The position also required

knowledge of principles and practices of contract law and administration and the ability to research and analyze contract terms and conditions. Id.

Again, plaintiff has not met her prima facie burden because she has not shown that her application demonstrated that she met the minimum qualifications for this position. Her application did not indicate that she had two years of progressively responsible business administration experience. See Duterte Decl. ¶ 8, Ex. D. As a Case Manager II for the State of Tennessee Department of Child Services, she negotiated agency adoption contracts, a position she held for only a year. Id. Ex. F. The description for her other two jobs indicates that she was primarily responsible for caseload management and not business or contract administration. Id. Plaintiff has declared that she was employed as a Judicial Assistant to the Chief Judge of the East Baton Rouge Parish Juvenile Court Division between August 1998 to April 2000. Scott Decl. ¶ 6. She also has declared that she was a practicing attorney providing legal representation to clients in the areas of juvenile dependency from February 1989 until June 1995. Id. Plaintiff, however, did not list either of these previous experiences on her employment application for the Contract and Program Specialist Position. Duterte Decl. ¶ 8, Ex. F. The application specifically indicated that omitted information would not be considered or assumed. Id. Accordingly, plaintiff is unable to meet her prima facie burden.

Furthermore, the successful applicant for the position had

extensive experience in contract management and monitoring, including developing budgets to conform to State and Federal requirements. Cochran Decl. ¶ 22. Ex. Q. Even if the plaintiff had met her prima facie burden, she has tendered no evidence to rebut this legitimate, non-discriminatory reason for defendants' failure to promote her to the Contracts and Program Specialist position. Summary judgment is granted for defendants on plaintiff's first cause of action, to the extent that it alleges that defendants acted unlawfully in failing to promote her to that position.

c.   **Employment Resources Specialist III (Lead Worker)**

Plaintiff applied for the ERS III position sometime between April and May 2004. SUF ¶ 12. The position required two years of experience performing duties equivalent to an Employment Resource Specialist II or an Eligibility Benefits Specialist II in a California County Department of Social Services or three years of professional casework experience performing public funded vocation guidance services, employment placement or counseling and course work in sociology. Silva Decl. ¶ 7, Ex. B. A bachelor degree could count as a substitute for one year of experience. Ex. B. Plaintiff had a Bachelor's degree in Sociology at the time of her application. Scott Decl. ¶ 7.

The parties dispute the date of plaintiff's promotion to ERS II. Plaintiff alleges that she had been promoted to ERS II on January 5, 2003. Scott Decl ¶ 11. Plaintiff's supervisor claims she

1   was promoted in February 2003. Kosar Decl. ¶ 3.[8] As is explained

2   beow, this disputed issue is not dispositive. If a fact finder were

3   to credit defendants' date, plaintiff had as required over one year

4   of experience as an ERS II at the time of her application. Silva

5   Decl. ¶ 8. Therefore, under such circumstances plaintiff met the

6   minimum qualifications for the position and established a prima

7   facie case of discrimination.

8       As explained above, once plaintiff establishes the prima

9   facie case, the burden shifts to the employer "to articulate a

10  legitimate, nondiscriminatory reason for the plaintiff's

11  rejection." Barefield, 500 F. Supp. 2d 1244 at 1260. Ms. Silva, the

12  manager responsible for overseeing supervisors and interviewing

13  employees, has declared that she did not recommend plaintiff

14  because she believed that plaintiff did not have the requisite

15  experience and "other candidates were better qualified for the

16  position based on their experience and skills exhibited during

17  their interview." Silva Decl. ¶ 12. The declarations presented by

18  the County do not indicate the qualifications of individuals

19  eventually hired for the position. See id. This leads to the

20  question of whether there exists a triable issue of fact. While it

21  is certainly true that the burden is on the plaintiff to

22  demonstrate discrimination, the plaintiff need not prove

23  discrimination at the summary judgment stage. Instead, the court

24

25       [8] It is, to say the least, difficult to know why defendant
26  tenders a declaration in support of its contention, because there
    must be records that demonstrate when plaintiff was promoted.

24

1   need only ask whether there is a material issue of fact permitting
2   a factfinder to find in plaintiff's favor. While a defendant's
3   legitimate reason may be a subjective one, "the defendant's
4   explanation of its legitimate reasons must be clear and reasonably
5   specific". <u>Burdine</u>, 450 U.S. at 257; <u>see also</u> <u>EEOC v. Ins. Co. of</u>
6   <u>N. Am.</u>, 49 F.3d 1418, 1420-21 (9th Cir. 1995) (under ADEA,
7   defendants' legitimate, age-neutral reason for failing to interview
8   plaintiff for being "overqualified" was adequate; although
9   "overqualification" was a subjective term, defendants had indicated
10  what objective concerns it encompassed). Nonetheless, subjective
11  reasons require close examination as to whether they mask
12  discrimination. Here, the plaintiff asserts that she was qualified
13  and defendants assert, with no evidentiary support, that the hiree
14  was more qualified. Under the circumstances the defendants' motion
15  must be denied as to plaintiff's first cause of action to the
16  extent that the claim is based on defendants' failure to promote
17  her to Employment Resource Specialist III. <u>See</u> <u>Reeves</u>, 530 U.S. at
18  148 ("[I]t is permissible for the trier of fact to infer the
19  ultimate fact of discrimination from the falsity of the employer's
20  explanation").

21          **d.   Employment Resource Specialist Supervisor**

22          Plaintiff applied for the Employment Resource Specialist
23  Supervisor position in May 2004. Silva Decl. ¶ 9. The Employment
24  Resources Specialist Supervisor position required two years of
25  experience as an Employment Resources Specialist III, with at least
26  one year as a supervisor; or one year of experience as an

1  Eligibility Benefits Specialist Supervisor; or three years of
2  professional casework experience performing vocational guidance
3  services, employment placement or counseling work, with at least
4  one year of supervisory experience; or any equivalent combination
5  of education, training and experience that would provide the
6  required knowledge. Silva Decl. ¶ 6; Ex. A. A bachelor's degree
7  could substitute for one year of experience, except for supervisory
8  experience. <u>Id.</u>

9        Plaintiff has not met her prima facie burden here to show that
10  she possessed the requisite qualifications for the position she
11  sought. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 253. There
12  is no evidence before the court that would permit a fact finder to
13  conclude that at the time she applied for the position, plaintiff
14  possessed two years of experience as an Employment Resources
15  Specialist III or one year as an Eligibility Benefits Specialist
16  Supervisor. <u>See</u> Scott Decl. ¶¶ 4-5 (describing the dates she held
17  her positions). There is also no evidence that she had three years
18  of professional casework experience performing vocational guidance
19  services, employment placement or counseling work, with at least
20  one year of supervisory experience. <u>Id.</u> Consequently, she has
21  failed to make a prima facie case with respect to this position.
22  Defendants' motion is granted to the extent that plaintiff's first
23  cause of action is premised on defendants' failure to promote her
24  to this position.

25        **e.  Social Worker III**
26        County records indicate that plaintiff applied for the Social

Worker III position in April 2004. Duterte Decl. ¶ 8, Ex. C.
Plaintiff alleges that she did not apply for the position and that
the County falsified the application and submitted the application
on her behalf. Scott Decl. ¶ 14. In effect, plaintiff has abandoned
this claim and the court will not consider it further.

### f.   Temporary Positions

In January 2004, non-supervisory employees were given the
opportunity to temporarily hold a supervisory position to gain
experience while a recruitment to permanently fill the position was
conducted. Declaration of Sheri Toy In Support of Defendants'
Motion for Summary Judgment ("Toy Decl.") ¶ 3. Plaintiff applied
for the following temporary positions: Employment/Eligibility
Services Manager, Employment Resources Specialist Supervisor, and
Employment Resources Specialist III.[9] SUF ¶ 10. Employees who were
selected for the temporary supervisory positions had to meet the
minimum qualifications for the position to be selected. Toy Decl.
¶ 3. Defendants have tendered evidence that the plaintiff was not
selected for any of these positions because she did not possess the
minimum qualifications for these temporary positions. Silva Decl.
¶¶ 4-8.

### i.   Employment Resources Specialist Supervisor

Plaintiff applied for the Employment Resources Specialist
Supervisor position in January 2004. SUF ¶ 10. The position
required: two years of experience as an Employment Resources

---

[9] Plaintiff applied for these positions again in April and May
2004, as discussed above.

1  Specialist III, with at least one year as a supervisor; or one year
2  of experience as an Eligibility Benefits Specialist Supervisor; or
3  three years of professional casework experience performing
4  vocational guidance services, employment placement or counseling
5  work, with at least one year of supervisory experience; or any
6  equivalent combination of education, training and experience that
7  would provide the required knowledge. Silva Decl. ¶ 6, Ex. A. A
8  bachelor's degree could substitute for one year of experience,
9  except for supervisory experience. Id.

10  Plaintiff has not met her prima facie burden to show that she
11  was qualified for these positions. See Texas Dep't of Community
12  Affairs, 450 U.S. at 253. Plaintiff has tendered no evidence to
13  show that at the time she applied for the position, she had two
14  years of experience as an Employment Resources Specialist III or
15  one year as an Eligibility Benefits Specialist Supervisor. See
16  Scott Decl. ¶¶ 3-16 (describing her experience). She also did not
17  have three years of professional casework experience performing
18  vocational guidance services, employment placement or counseling
19  work, with at least one year of supervisory experience. Id.
20  Plaintiff has failed to state a prima facie case with respect to
21  this position.

22  **ii.  Employment Resources Specialist III (Lead**
23  **Worker)**

24  Plaintiff applied for the Employment Resources Specialist III
25  position in January 2004. SUF ¶ 10. The position required: two
26  years of experience performing duties equivalent to an Employment

1 Resource Specialist II or an Eligibility Benefits Specialist II in

2 a California County Department of Social Services or three years

3 of professional casework experience performing public funded

4 vocation guidance services, employment placement or counseling and

5 course work in sociology. Silva Decl. ¶ 7; Ex. B. A bachelor degree

6 could count as a substitute for one year of experience. Id.

7     Plaintiff had a Bachelor's degree in Sociology to compensate

8 for one year of experience. Scott Decl. ¶ 7. The parties dispute

9 the date of plaintiff's promotion to ERS II. The plaintiff has

10 declared that she was promoted to ERS II on January 5, 2003. If

11 this is the case, she had a year of experience as an ERS II at the

12 time of the application and would qualify for the position. Scott

13 Decl. ¶ 11. Scott's supervisor, Susan Kosar, has declared that she

14 promoted Scott to ERS II in February 2003. Kosar Decl. ¶ 3. If that

15 were the case, plaintiff would not meet the qualifications. If a

16 fact finder were to credit the plaintiff's recollection, she has

17 made her prima facie case.

18     The defendants have not met their burden to produce evidence

19 of a ligitimate, non-discriminatory reasons for plaintiff not being

20 selected for this temporary position. The only evidence defendants

21 tendered on this issue is Ms. Silva's and Ms. Toy's declarations

22 that they believed plaintiff was not qualified for the position.

23 See Silva Decl. ¶¶ 8, 11. Obviously, if the jury were to credit the

24 plaintiff in her prima facie case, they could similarly discredit

25 Ms. Silva's and Ms. Toy's veracity in the sincerity of their

26 proffered reason. See Reeves, 530 U.S. at 146-49. This suffices to

1  create a genuine issue for trial. Summary judgment is therefore
2  denied on this claim to the extent that it is based on the
3  plaintiff's application for the temporary position of Employment
4  Resources Specialist III (Lead Worker).

5           **iii.     Employment Eligibility Services Manager**

6           Plaintiff applied for the temporary position of Employment
7  Eligibility Services Manager in January 2004. SUF ¶ 10. At that
8  time she was a ERS II with Solano County. Minimum qualification for
9  the Employment Eligibility Service Manager were: three years of
10 increasingly responsible experience in a Public Assistance program
11 of which one year was in a supervisory capacity; a bachelors degree
12 in social work, public administration, business administration or
13 a related field; and knowledge of budget expenditure monitoring and
14 the principles and practices of public administration and program
15 management. Cochran Decl. ¶ 6, Ex. A.

16          The plaintiff has not made a prima facie case that she was
17 qualified for this position. See Texas Dep't of Community Affairs,
18 450 U.S. at 253. Her application does not indicate that she had
19 experience in budget monitoring, evaluating program effectiveness,
20 developing goals and objectives for assigned work units, or
21 preparing narrative and statistical reports. Scott Decl. ¶¶ 5-7,
22 Ex. 2. Her application also indicated that she was also not in
23 supervisory capacity at any of her previous positions. Id.
24 Accordingly, summary judgement is granted for the defendants on
25 plaintiff's first cause of action to the extent that it is based
26 on defendants' failure to promote her to this position.

1         **g.   Plaintiff's Participation In the Future Leaders**

2            **Program**

3        Plaintiff alleges that Lewis, Silva and Toy led her to believe

4  that participation in the Future Leaders Program for the Solano

5  County Health and Social Services Department would qualify her for

6  the supervisory and managerial positions. Scott Decl. ¶ 34.

7  Plaintiff further alleges that she relied on their representations

8  that participation in the program was for the purpose of filling

9  the temporary supervisory positions. Both Peggy Silva and Sheri Toy

10  have declared that participants in the Future Leaders Program were

11  not guaranteed a promotion to a supervisory position. Silva Decl.

12  ¶ 14; Toy Decl. ¶ 9.

13        The evidence tendered by both parties shows that on May 14,

14  2004, the plaintiff received an e-mail inviting her to learn more

15  about the Future Leadership Program on May 26, 2004. Boyd Decl. ¶

16  10, Ex. 11. On May 26, 2004, she was added to the Future Leaders

17  Program Commitment List. <u>Id.</u> Open enrollment for the group of

18  Future Leaders was due to close on June 1, 2004, and the

19  Introduction to Supervision training began on June 9, 2004. <u>Id.</u>

20        Based on the evidence before the court, a fact finder could

21  not reasonably conclude that plaintiff reasonably believed that her

22  participation in the Future Leaders Program would substitute for

23  certain qualifications for the positions for which she applied.

24  Plaintiff applied for the three temporary positions in January

25  2004, before she found out about the Future Leadership program on

26  May 26, 2004. The program did not begin until June 2004, after she

1 had applied for the permanent positions in April and May 2004.

2 Furthermore, the Future Leadership program had training scheduled

3 through March 2005. Boyd Decl. Ex. 11. Based on this chronology,

4 a factfinder could not find reasonable the plaintiff's alleged

5 belief that her participation in the program would qualify her for

6 certain positions.

7 **B.    Plaintiff's Second Cause of Action**

8      In her second cause of action, plaintiff alleges the

9 defendants harassed her, in violation of the FEHA. In order to

10 establish the prima facie hostile work environment claim, plaintiff

11 must raise a triable issue of fact as to whether "(1)she was

12 subject to verbal or physical conduct because of her race, (2) the

13 conduct was unwelcome, and (3) the conduct was sufficiently severe

14 or pervasive to alter the condition of plaintiff's employment and

15 create an abusive work environment."[10] Manatt v. Bank of America,

16 339 F.3d 792, 798 (9th Cir. 2003). "The hostile work environment

17 must both subjectively and objectively be perceived as abusive."

18 Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

19      With respect to defendant Duterte, there is no evidence before

20 the court that would permit a reasonable jury to conclude that he

21 subjected plaintiff to harassment. The only evidence tendered is

22 that relating to plaintiff's termination. Defendants have presented

23 evidence that Duterte, the Director of the County's H&SS

24

25      [10] As stated above, this claim under the FEHA is analyzed
under the framework for comparable Title VII claims. Brooks, 229
26 F.3d at 917; Beyda, 65 Cal. App. 4th at 517.

1   Department, relied on the evidence presented by the Solano County

2   Special Investigation Unit and determined that Scott was involved

3   in welfare fraud or in any event that her conduct was unethical.

4   Duterte Decl. ¶¶ 8-11. He directed Rose Mary Lewis to notify Ms.

5   Scott of the proposed termination and that she could respond to the

6   notice or in writing by contacting him within ten calendar days.

7   Id. ¶ 12, Ex. C. The plaintiff responded and requested a Skelly

8   hearing, which was conducted on October 4, 2004. Id. ¶ 14. After

9   considering Scott's written and oral responses to her proposed

10  termination, Duterte elected  to proceed with the termination on

11  October 14, 2004. Id. ¶ 16.

12      This evidence does not suffice to show Duterte engaged in

13  harassment. "Unlike other forms of discrimination, harassment or

14  hostile work environment claims under California's FEHA concern

15  actions outside the scope of job duties which are not of a type

16  necessary to business and personnel management." Velente-Hook v.

17  Eastern Plumas Health Care, 368 F. Supp. 2d 1084, 1102 (E.D. Cal.

18  2005). "[P]ersonnel management actions commonly necessary to carry

19  out the duties of business and personnel management, and thus

20  outside the purview of harassment, include hiring and firing, job

21  or project assignment . . . promotion or demotion, performance

22  evaluations, . . .the assignment or non-assignment of supervisory

23  functions, and decisions regarding meetings." Id. Plaintiff has

24  presented no evidence from which a reasonable factfinder could

25  infer that Mr. Duterte had improper motives or engaged in any

26

1  harassment because of plaintiff's race. Plaintiff's conclusory

2  statements that Defendant's action was motivated by her race do not

3  suffice to withstand summary judgement. Nat'l Steel Corp.v. Golden

4  Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

5      There is also insufficient evidence to permit a fact finder

6  to conclude that defendant Patricia Edie engaged in unlawful

7  harassment against the plaintiff. The plaintiff asserts that Edie

8  took adverse personnel actions against her which constituted a

9  hostile work environment. Scott Decl. ¶ 20. According to plaintiff,

10 Edie assigned her Spanish speaking clients even though plaintiff

11 does not speak Spanish. Id. ¶¶ 19-20, 43; see also SUF ¶ 120. She

12 asserts that defendant overloaded plaintiff with a case load that

13 she knew plaintiff could not complete, and complained about the

14 length of time plaintiff took to interview her clients. Id.

15     Edie has declared that she was rarely at the Vacaville office,

16 and only spoke with plaintiff on two occasions. Declaration of

17 Patricia Edie In Support of Defendants' Motion for Summary Judgment

18 ("Edie Decl.") ¶ 8. One of the conversations was initiated by Scott

19 and not work related. Id. The second conversation was regarding

20 Scott's time record. Id. According to Edie, plaintiff never

21 complained to her that she was being assigned Spanish speaking

22 clients or that she felt Solano County employees were harassing or

23 retaliating against her. Id. ¶ 6. Edie further alleged that she

24 never told plaintiff to speed up her client intake interviews. Id.

25 ¶ 7.

26     Even though the facts are in dispute, Ms. Scott has failed to

1 established a prima facie case because defendant Edie's actions on

2 which the plaintiff bases her claim are not outside of Edie's

3 duties as a supervisor.  See Reno v. Baird, 76 Cal. Rptr. 2d 499,

4 502 (1998) (holding that "harassment consists of conduct outside

5 the scope of necessary job performance, conduct presumably engaged

6 in for personal gratification, because of meanness or bigotry, or

7 for other personal motives").

8      Finally, the plaintiff has tendered no evidence that would

9 permit a factfinder to hold the County liable for harassment. The

10 FEHA prohibits an employer from failing to take steps that prevent

11 discriminatory harassment from occurring. Cal. Gov't Code §

12 12940(k). Here, plaintiff has made no showing that Duterte, Edie,

13 or any other County employee harassed her. As such, the County

14 cannot be liable as a matter of law. Trujillo v. N. County Transit

15 Dist., 63 Cal. App. 4th 280, 289 (1998).

16      Accordingly, defendants' motion for summary judgement is

17 granted on the plaintiff's second cause of action.

18 **C.   Plaintiff's Third Cause of Action**

19      In her third cause of action, the plaintiff alleges that the

20 defendants unlawfully retaliated against her in violation of the

21 FEHA. Under the FEHA anti-retaliation provision it is unlawful for

22 "any employer, labor organization, employment agency, or person to

23 discharge, expel, or otherwise discriminate against any person

24 because the person has opposed any practices forbidden under this

25 part or because the person has filed a complaint, testified, or

26 assisted in any proceeding under this part." Cal. Gov. Code

1  12940(h). "The law protects an employee from discrimination

2  'because' the employee has opposed what he reasonably believes to

3  be an unlawful practice." <u>La Strape v. E & J Gallo Winery</u>, No. 1-

4  08-784, 2008 WL 2509203 (E.D. Cal., Jun. 23, 2008); <u>Manatt v. Bank</u>

5  <u>of America</u>, 339 F.3d 792 (9th Cir. 2003) (construing Title VII) .

6  To survive a motion for summary judgment, plaintiff must first show

7  (1) involvement in a protected activity, (2) an adverse employment

8  action and (3) a causal link between the two.[11] <u>McAlindin v. County</u>

9  <u>of San Diego</u>, 192 F.3d 1226, 1238 (9th Cir. 1999). "Thereafter, the

10 burden of production shifts to the employer to present legitimate

11 reasons for the adverse employment action. Once the employer

12 carries this burden, plaintiff must demonstrate a genuine issue of

13 material fact as to whether the reason advanced by the employer was

14 a pretext." <u>Id.</u> Only then does the case proceed beyond the summary

15 judgment stage. <u>Id.</u>

16     The California Supreme Court has held that employers may be

17 liable for retaliation under the FEHA, but non-employer individuals

18 working for the employer, including supervisors, may not be held

19 personally liable. <u>Jones v. Lodge at Torrey Pines P'ship</u>, 42 Cal.

20 4th 1158 (2008). Accordingly, plaintiff does not have a retaliation

21 cause of action against Defendants Edie and Duterte, and summary

22 judgement is granted in their favor.

23     Furthermore, plaintiff has failed to state a prima facie case

24

25     [11] As stated above, the test for determining whether there is
26 discrimination under FEHA is the same as that utilized in analyzing
   Title VII claims. <u>Tarin</u>, 123 F.3d at 1263 n. 2.

1   for retaliation by the County or the H&SS because she has tendered

2   no evidence that she engaged in a protected activity under FEHA.

3   There is no evidence before the court from which a factfinder could

4   conclude that the plaintiff opposed any practices forbidden under

5   FEHA such as discrimination and harassment on the basis of sex,

6   race, religion, and other enumerated characteristics.

7        Plaintiff's only evidence in support of this claim appears to

8   be that relating to the County's failure to promote her. After

9   applying for the temporary positions in January 2004, plaintiff

10  "inquired about the reason why [she] was not selected for any of

11  these positions." Scott Decl. ¶ 15. Plaintiff has testified that

12  she believed she contacted Rose Mary Lewis, Susan Kosar and Peggy

13  Silva to ask about the status of her application. SUF ¶ 121.

14  Plaintiff also has testified that she asked these individuals, "why

15  didn't you make the assignments like you said you were going to

16  make the assignments to people in the department, namely to

17  myself." SUF ¶ 122. Plaintiff posits that from these inquiries she

18  expected these individuals to understand that she was saying that

19  they were discriminating against her because of her race. SUF ¶

20  123. Plaintiff declares that following these inquiries she became

21  a target of unfair discipline. Scott Decl. ¶ 16.

22       An employee cannot survive summary judgement absent evidence

23  demonstrating that she "gave the employer enough information to

24  make a reasonable employer think there was some probability" that

25  she was being subject to unlawful conduct because of a protected

26  characteristic. Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1187

1  (9th Cir. 2005) (quoting <u>Zimmerman v. Cook County Sheriff's Dep't</u>,

2  96 F.3d 1017, 1019 (7th Cir. 1996)). Here, a reasonable jury could

3  not find that plaintiff's inquiries regarding who got promoted to

4  the positions would put defendants on notice that plaintiff was

5  complaining of discrimination because of her race. Indeed, from all

6  that appears, no County employee was aware of any complaints by

7  plaintiff about discriminatory treatment. Silva Decl. ¶ 20;

8  Declaration of Myrtle Boggan In Support of Defendants' Motion for

9  Summary Judgment ("Boggan Decl.") ¶ 14; Kosar Decl. ¶ 14;

10 Declaration of Carol Saint-Louis In Support of Defendants' Motion

11 for Summary Judgment ("Saint-Louis Decl.") ¶ 16; Edie Decl. ¶ 9;

12 Duterte Decl. ¶ 21; Toy Decl. ¶ 11.

13        Even if plaintiff had made her prima facie case, she must

14 also demonstrate that she opposed the practice because she

15 reasonably believed it to be discriminatory. <u>See</u> <u>Jurado v. Eleven-</u>

16 <u>Fifty Corp.</u>, 813 F.2d 1406, 1412 (granting defendant summary

17 judgement on the retaliation claim because plaintiff had not shown

18 that he ever opposed the employment practice as discriminatory and

19 merely opposed it for personal reasons). At the time plaintiff made

20 inquiries regarding the promotions, plaintiff could not have

21 reasonably believe that she was making a complaint about

22 discrimination because she did not know who received the

23 promotions, and she did not know the race or qualifications of the

24 individuals selected. Angelo Decl. ¶¶ 1-5 (Scott. Depo. 52: 16-15;

25 57: 7-60). Accordingly, summary judgement is granted on the

26 plaintiff's third cause of action.

**D.   Plaintiff's Common Law Causes of Action**

   **1.   California Government Claims Act**

Several of the plaintiff's causes of action have been brought under common law and fail as a matter of law because the plaintiff has not identified an authorizing statute. These include plaintiff's fifth (negligent infliction of emotion distress), sixth (discipline in violation of public policy), seventh (wrongful termination in violation of public policy), eighth (wrongful termination) and eleventh (negligent hiring, supervision, and training) causes of action.[12]

The California Government Claims Act provides that "except as otherwise provided by statute, [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't. Code § 815. "Public entities" include counties, public agencies, and any other political subdivision of the state. Id. § 811.2. As the plain language of § 815 suggests, the purpose of the statute is to "abolish all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution. . . ." Id. § 815 Senate Committee Comment; see also Williams v. Horvath, 16 Cal. 3d 834, 838 (Cal. 1976) (purpose of the Government Claims Act is to

---

[12] The court does not include plaintiff's intentional tort claims (intentional infliction of emotional distress and defamation) in this group, as they are authorized under California Government Code § 815.3 in certain circumstances. These claims are discussed in section III.D.2, *infra*.

1   limit public entity liability narrowly, to statutorily-defined

2   circumstances); <u>Flanagan v. Benicia Unified Sch. Dist.</u>, No. S-07-

3   333, 2007 WL 4170632, at *4 (E.D. Cal. Nov. 19, 2007). "Public

4   policy" cannot sustain a claim for damages under § 815, unless that

5   public policy has been expressly codified in an authorizing

6   statute. <u>Ross v. San Francisco Bay Area Rapid Transit Dist.</u>, 146

7   Cal. App. 4th 1507 (2007) (holding a claim for wrongful termination

8   in violation of public policy against a state agency was barred

9   under § 815 because there was no authorizing statute).[13]

10   With regards to plaintiff's negligence claims specifically

11   (her fifth and eleventh causes of action), Government Code § 815.6

12   expressly requires an authorizing statute, which has not been

13   identified here. A public entity or its agents can be sued for

14   negligence only if it failed to discharge a mandatory duty. Cal.

15   Gov't Code § 815.6. Specifically, a public entity may be liable for

16   negligence if "an enactment" has created a mandatory, not

17   discretionary, duty for the purpose of protecting against the risk

18   of the type of injury of which the plaintiff complains,[14] and that

19

20   [13] In its September 5, 2006 order granting in part the
     defendants' motion to dismiss, the court held that § 815 did not
21   bar plaintiff's claims for constructive discharge and termination
     because these were authorized by the FEHA. Subsequently, the
22   California Court of Appeals considered and rejected this
     interpretation. <u>Ross</u>, 146 Cal. App. 4th at 1517 n. 9. The court
23   therefore abjures its prior holding, to the extent that it
     conflicts with current state law.

24   [14] Not only does plaintiff fail to identify an authorizing
     statute for her eleventh cause of action (negligent hiring,
25   supervision, and training), defendant's employment relationship
     with plaintiff is not a special relationship giving rise to a duty
26   of care to her. <u>Foley v. Interactive Date Corp.</u>, 47 Cal. 3d 654,

1    the breach of the duty has proximately caused the plaintiff's

2    injuries. <u>Becerra v. County of Santa Cruz</u>, 68 Cal. App. 4th 1450,

3    1458 (1998); <u>see also</u> <u>Flanagan v. Benicia Unified Sch. Dist.</u>, No.

4    S-07-333, 2008 WL 435355 (E.D. Cal. Feb. 14, 2008)(Karlton, J.).

5         Here, the plaintiff has identified no statute or other

6    enactment that would authorize her fifth, sixth, seventh, eighth

7    and eleventh causes of action. She argues that her sixth, seventh,

8    and eighth claims -- which allege wrongful discipline or

9    termination -- are authorized under the general principle that a

10   plaintiff may bring suit for "fraudulent prevent[ion of] redress

11   and retaliation" and "violation of an employee's right to privacy."

12   Plaintiff's Memorandum In Opposition to Defendants' Motion for

13   Summary Judgment at 35-36. The cases she cites for this position,

14   however, do not stand for as broad a principle as plaintiff

15   asserts. In <u>Operating Eng'rs Local 3 v. Johnson</u>, 110 Cal. App. 4th

16   180 (2003), the California Court of Appeals held only that an

17   employee could bring a claim for violation of her constitutional

18   right to privacy in court, as this claim was not under the

19   exclusive authority of the Workers Compensation Appeals Board. <u>See</u>

20   <u>also</u> <u>Fretland v. County of Humboldt</u>, 69 Cal. App. 4th 359

21   (1999)(holding that employee's claims for intentional and negligent

22   infliction of emotional distress were not under the exclusive

23   purview of the workers' compensation statute). Even if a jury were

24   to credit the plaintiff's evidence of the defendants' conduct that

25   ────────────────

26   793-93 (1988). To the extent that this claim alleges that such a
     duty existed, defendants' motion must be granted.

1  the plaintiff characterizes as violative of her privacy rights,

2  including disclosing that information about her welfare case to

3  third parties and basing her termination on groundless welfare

4  fraud allegations, the court is not aware of any state enactment

5  that would authorize plaintiff's recovery notwithstanding

6  Government Code §§ 815 and 815.6. Defendants' motion, therefore,

7  must be granted as to plaintiff's fifth, sixth, seventh, eighth and

8  eleventh causes of action.

9           **2.    Immunity of Defendants**

10      The plaintiff has brought her fourth (intentional infliction

11  of emotional distress), sixth (discipline in violation of public

12  policy), seventh (wrongful termination in violation of public

13  policy), eighth (wrongful termination), ninth (violation of

14  California constitution Article I, Section 9), and twelfth

15  (defamation) causes of action against defendants Duterte and Edie.

16  In addition to the other deficiencies in these claims discussed

17  herein, the individual defendants are immune from liability for the

18  conduct identified by plaintiff as the basis of these causes of

19  action.

20      Public employees are typically immune from liability for their

21  discretionary acts. Caldwell v. Montoya, 10 Cal. 4th 972 (1995).

22  A public employee has broad immunity for employment decisions,

23  including decisions relating to discipline and termination of an

24  employee. Cal. Gov't Code §§ 820, 820.2, 821.6; Caldwell, 10 Cal.

25  4th at 981-82 (immunity for school board "dealing with personnel

26  problems," including the decision to fire a school superintendent);

1  Hardy v. Val, 48 Cal.2d 577, 581 (Cal. 1957) (immunity for state

2  defendant who maliciously initiated groundless employment

3  termination proceedings against plaintiff); Shoemaker v. Myers,

4  2 Cal. App. 4th 1407 (1992)(holding that a claim of wrongful

5  termination in violation of public policy "falls squarely within

6  section 821.6"); Kemmerer v. Fresno, 200 Cal. App. 3d 1436-37

7  (1988)(official immune under § 821.6 from tort claims relating to

8  an investigation leading to the termination of an employee). The

9  official remains immune even if he acted with malice or without

10 probable cause. Cal. Gov't Code § 821.6.

11      In contrast, a public employee may be liable for acts or

12 omissions related to ministerial functions. Cal. Gov't Code §

13 820.2; Lopez v. S. Cal. Rapid Transit Dist., 40 Cal. 3d 780, 794

14 (1985). The distinction between a discretionary and ministerial act

15 depends on the circumstances. Id. Generally, a policy decision is

16 a discretionary one; the steps an employee is required to take to

17 carry out those decisions are ministerial. Id.; see generally

18 Johnson v. State, 69 Cal.2d 782, 796-97 (1968)(collecting cases).

19 Nonetheless, an act may be ministerial even if the employee

20 exercised some decision making in choosing his course of conduct.

21 Lopez, 40 Cal. 3d at 794. For example, state statute requires a bus

22 driver to protect his passengers from assaults from other

23 passengers; that is a ministerial duty, even though the bus driver

24 uses his judgment in deciding how to respond. Id. If an employee

25 is immune from liability for his own act or omission, his employer

26 is immune as well, unless a statute specifically allows for the

1   liability of the employer. Cal. Gov't Code § 815.2(b); <u>see</u>, <u>e.g.</u>,

2   Cal. Gov't Code § 830 (providing that a public entity may be liable

3   for dangerous conditions on its premises even if its agents are

4   immune from suit).

5       Here, the plaintiff bases her allegations for these claims on

6   defendants' conduct relating to her termination and to her

7   investigation for improper receipt of welfare benefits.[15] She has

8   not tendered adequate evidence on either grounds, however, to show

9   that defendants are not immune.

10      Plaintiff appears to base several of her causes of action on

11  defendants' actions in relation to plaintiff's discipline and

12  eventual termination. Specifically, she states that defendant

13  Duterte knew that the plaintiff had not committed welfare fraud or

14  done anything inappropriate in her receipt of welfare benefits, but

15  nevertheless the defendants terminated her on those grounds.

16  Plaintiff's Opposition to Defendants' Motion for Summary Judgment

17  at 36-37; Scott Decl. ¶¶ 28-30, 43. Once again it may be that

18  plaintiff has tendered as evidence in support of thus claim the

19  written decision of the California Unemployment Insurance Appeals

20  Board, affirming the decision that the plaintiff was eligible for

21

22  _____

23      [15] As stated above, plaintiff's opposition memorandum and
    supporting evidence is disorganized, making it difficult to fully
24  discern what evidence she tenders in support of which claim. The
    court therefore has considered all of plaintiff's tendered evidence
25  as it applies to each of her claims, regardless of whether that
    evidence was expressly relied on in plaintiff's opposition
26  memorandum.

1  unemployment benefits."[16] Scott Decl. Ex. 8.

2      Aside from the issue of whether the Board's determination is
3  evidence, it appears there is no dispute that the termination
4  decision was based on the findings of the H&SS investigation. Those
5  findings' implicated the plaintiff's honesty and integrity in
6  performing her job duties, which again appears to be a much broader
7  inquiry than that which confronted the Unemployment Insurance
8  Appeals Board. Plaintiff's evidence does not suffice to show that
9  defendants' acts were anything aside from discretionary personnel
10  decisions for which an individual would be immune from liability.
11  See Duterte Decl. ¶¶ 6-11. Therefore, defendants' motion must be
12  granted as to plaintiff's fourth, sixth, seventh, eighth, ninth,
13  and twelfth claims to the extent that they are based on plaintiff's
14  termination.

15      To the extent that these claims are based upon defendants'
16  conduct relating to the investigation of her receipt of benefits
17  for her nephew, plaintiff's tendered evidence is insufficient to
18  show that the defendants are not immune from liability. The
19  decision to investigate a benefit recipient is replete with
20  discretionary choices. For instance, the plaintiff's case worker
21  has declared that the referral to the county's investigation unit
22  was based on an apparent discrepancy the case worker perceived in
23  the plaintiff's benefit application. Boggan Decl. ¶¶ 4-10. There

24  _____

25      [16]  As stated above, Unemployment Insurance Appeals Board
    decisions do not have *res judicata* effect. Pratt v. Local 683, Film
26  Technicians etc., 260 Cal. App. 2d 545 (1968); Mack v. South Bay
    Beer Distributors, Inc., 798 F.2d 1279 (9th Cir. 1986).

1  is no evidence tendered by either party to indicate that the case

2  worker was required to take such action in the circumstances

3  described, which suggests that the act was discretionary.

4       Similarly, the evidence tendered by defendants indicates that

5  the County's special investigations unit conducted an investigation

6  and concluded that the plaintiff's nephew was not residing with

7  her, despite her representations to the contrary. Duterte Decl. Ex.

8  A-B. The manner in which this investigation was conducted appears

9  to be quintessentially discretionary. See Hardy, 48 Cal. 2d at 582-

10 83 (holding that public officials' investigations were

11 discretionary acts for which they were immune). There has been no

12 evidence tendered that would permit a factfinder to conclude that

13 there was a certain process the investigation was required to

14 follow, which did not occur, or that the investigation was

15 otherwise a ministerial function. With regard to her defamation

16 claim specifically, Government Code section 821.6 and Civil Code

17 47(b) appear to grant immunity to the defendants' statements made

18 in connection with the investigation into her receipt of benefits

19 and the discipline and termination proceedings. Hagberg v. Cal.

20 Fed. Bank FSB, 32 Cal. 4th 39, 50 (2004); Kemmerer, 200 Cal. App.

21 3d at 1439. Consequently, defendants' motion must be granted as to

22 plaintiff's fourth, sixth, seventh, eighth, ninth, and twelfth

23 claims to the extent that they are based on facts relating to the

24 investigation into plaintiff's receipt of benefits for her nephew.

25 **E.   Plaintiff's Tenth Cause of Action**

26      In her tenth cause of action, the plaintiff alleges that all

1  defendants violated the California Government Code section 12948.

2  Section 12948 provides, "It is an unlawful practice under this

3  section for a person to deny or to aid, incite, or conspire in the

4  denial of the rights created by Section 51, 51.5, 51.7, 54, 54.1,

5  of 54.2 of the Civil Code." Plaintiff has not tendered any evidence

6  from which a factfinder could conclude her rights under those

7  sections were denied.

8      Civil Code section 51 is the Unruh Civil Rights Act, which

9  prohibits discrimination on, *inter alia*, race. The only evidence

10 that plaintiff has tendered of racial discrimination is her own

11 declaration describing her employment history with the County,

12 including her belief that less-qualified Caucasian individuals were

13 promoted instead of her and that she was disciplined and terminated

14 because of her race. The Unruh Civil Rights Act, however, does not

15 encompass allegations of employment discrimination. Alcorn v. Anbro

16 Eng'q, Inc., 2 Cal. 3d 493, 499-500 (1970).

17     Plaintiff has tendered no evidence that Civil Code sections

18 54, 54.1 or 54.2 have been violated by defendants. These sections

19 prohibit disability discrimination. Plaintiff has tendered no

20 evidence that she has a disability.

21     Accordingly, ever drawing all inferences in plaintiff's favor,

22 she has failed to show that there is a genuine issue of material

23 fact on her tenth cause of action. Matsushita, 475 U.S. at 587-88.

24 Defendants' motion is granted on this claim.

25 **F.   Plaintiff's Thirteenth Cause of Action**

26     In her thirteenth cause of action, the plaintiff alleges that

1 defendants Solano County Health and Social Services Department,

2 Duterte, and Edie violated 28 U.S.C. § 1983 by carrying out a

3 policy under color of state law of unlawfully denying plaintiff's

4 equal employment opportunities, discriminating against her on the

5 basis of race, and creating a work environment that was

6 discriminatory and retaliatory. For the reasons noted above,

7 Plaintiff has failed to adduce sufficient evidence to permit a

8 factfinder to find in her favor on this claim.

9     Because plaintiff has failed to make an adequate showing of

10 unlawful discrimination under Title VII or the FEHA (which employs

11 the Title VII standard), as a matter of law she cannot show that

12 defendants are liable under § 1983. <u>Sischo-Nownejad v. Merced Cmty.</u>

13 <u>Coll. Dist.</u>, 934 F.2d 1104, 1112 (9th Cir. 1991) <u>overruled on other</u>

14 <u>grounds by</u> <u>Dominguez-Curry v. Nevada Trans. Dist.</u>, 424 F.3d 1027

15 (9th Cir. 2005). On this grounds alone, defendants' motion must be

16 granted as to plaintiff's thirteenth cause of action.

17     Moreover, the plaintiff has not shown a causal link between

18 the county's acts and any harm she may have suffered. A public

19 entity may only be liable under § 1983 if the constitutional

20 violation occurred as a result of an official municipal policy or

21 custom. <u>Monell v. New York Dep't of Soc. Serv.</u>, 436 U.S. 658, 691

22 (1978). A custom that is not official agency policy may create §

23 1983 liability if it is "permanent and well-settled." <u>Id.</u> An agency

24 may not be liable on a *respondeat superior* theory, but only if

25 there is evidence that there is "an affirmative link between the

26 policy and the specific constitutional violation alleged." <u>City of</u>

1   <u>Oklahoma v. Tuttle</u>, 471 U.S. 808, 821 (1985). Here, the only

2   evidence plaintiff has tendered of the H&SS's official policy is

3   her declaration describing her experiences in applying for county

4   positions and her eventual termination. Scott Decl. ¶¶ 16-17, 20,

5   29, 33-58. She has presented no evidence that the county or its

6   agency promulgated a policy that led to the constitutional

7   violations she alleges. She also has presented no evidence that

8   there was any sort of affirmative link between the acts of county

9   policy-makers and the emergence of the custom or practice that she

10  alleges caused a constitutional violation. <u>See</u> <u>City of Oklahoma</u>,

11  471 U.S. at 821.

12      Finally, in order to prove a claim of discrimination under §

13  1983, the plaintiff must show that defendants had an intent to

14  discriminate. <u>Firefighters Local Union No. 1784 v. Stotts</u>, 467 U.S.

15  561, 583 n. 16; <u>Peters v. Lieuallen</u>, 746 F.2d 1390, 1393 (9th

16  Cir.). Here again, without restating all the evidence, the court

17  concludes plaintiff has tendered no evidence from which a

18  reasonable factfinder could conclude that defendants Duterte or

19  Edie intended to discriminate against plaintiff. <u>See</u> <u>Nat'l Steel</u>

20  <u>Corp.</u>, 121 F.3d at 502; <u>see also</u> <u>Sischo-Nownejad</u>, 934 F.2d at 1112.

21  Defendants Duterte and Edie's motion is granted as to this claim.

22                          **IV.  CONCLUSION**

23      For the reasons stated herein, the defendants' motion is

24  GRANTED, except as to plaintiff's first cause of action to the

25  extent that the claim is based on defendants' failure to promote

26  her to the temporary position of Employment Resource Specialist III

1  (Lead Worker) and to the permanent position of Employment Resource

2  Specialist III (Lead Worker).

3      IT IS SO ORDERED.

4      DATED:  August 15, 2008.

5

6

7                                    LAWRENCE K. KARLTON
                                     SENIOR JUDGE
8                                    UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26